# Illinois Official Reports

## Appellate Court

---

### *People v. Toliver*, 2016 IL App (1st) 141064

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS TOLIVER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-1064 |
| Filed | August 9, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-15993; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Sharon Goott Nissim, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Clare Wesolik Connolly, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justice Neville concurred in the judgment and opinion.<br>Presiding Justice Pierce dissented, with opinion. |

**OPINION**

¶ 1        When a drug offense takes place within 1000 feet of a school, does the State also need to establish that the structure was operating as a school at the time of the offense? Defendant Marcus Toliver contends the State failed to prove this purported element beyond a reasonable doubt. We disagree, finding no case or statutory authority requiring the State prove the school "operational." In addition, Toliver stipulated and conceded to the jury that he was arrested within 1000 feet of a school. Toliver also requests, and we concur, that the mittimus be corrected to reflect eight additional days of presentence credit.

¶ 2                                    BACKGROUND

¶ 3        A jury found defendant Marcus Toliver guilty of one count of unlawful possession of a controlled substance (more than 1 gram but less than 15 grams of heroin) with intent to deliver, and one count of unlawful possession with intent to deliver within 1000 feet of Lathrop Elementary School.

¶ 4        Pertinent here, at trial, Chicago police officer John Sandoval testified that he had been assigned to the tenth police district for seven years and was familiar with the neighborhood around 3225 West Douglas Boulevard, having conducted surveillance or enforcement in that area "hundreds" of times and having "made about a hundred or so arrests there." On July 25, 2013, Sandoval, a tactical officer, conducted surveillance from an elevated position around the Douglas Boulevard location. Douglas Boulevard had a parkway between the eastbound and westbound lanes. Officer Jose Duran acted as an enforcement officer in a nearby car.

¶ 5        At about 11:40 a.m., Sandoval, using binoculars, saw two men standing together in the parkway at 3225 West Douglas Boulevard. One of the men was Toliver. His companion was shouting, "blows blows," which Sandoval explained is a street term for open-air narcotics sales of heroin. Sandoval watched as an unidentified man on a bicycle approached Toliver and briefly spoke with him. Toliver accepted "paper USC currency" from the man, walked to a nearby tree, picked up a small plastic bag from its base, withdrew a small white item from the bag, returned the bag to the tree base, and gave the white item to the unidentified man. The process was repeated a couple of minutes later with a second unidentified man. Sandoval's experience informed him that he had just witnessed two hand-to-hand narcotics transactions. Sandoval testified that the events occurred within 1000 feet of Lathrop Elementary School, which he described as "right around the corner" at 1440 South Christiana Avenue.

¶ 6        Sandoval notified Officer Duran by radio of what he had seen, and he described Toliver and his companion. Duran and another officer drove to the location and arrested Toliver and his companion. Duran recovered from the base of the tree the plastic bag, which contained 13 smaller clear Ziploc bags each containing a white powder substance. In Sandoval's experience, the smaller bags sold for $10 apiece and each bag would weigh about 0.4 gram. When arrested, Toliver possessed $20 in cash but no drugs.

¶ 7        Officer Jose Duran testified he had been assigned to the tenth police district for eight years and had conducted surveillance and made arrests in the area. Duran was familiar with some of the schools in the area and was familiar with the Lathrop Elementary School. Duran was shown a satellite overhead map of the general vicinity of 3225 West Douglas Boulevard in the

tenth district. He circled a building designated in print on the map as "Lathrop Elementary School."

¶ 8      At trial, the parties stipulated to the fact that the distance between Toliver's activity and Lathrop Elementary School was 967 feet.

¶ 9      During closing argument, Toliver's trial counsel told the jury, "We agree that from where [Toliver] was arrested and the school is under a thousand feet." Counsel argued that it did not matter how far Toliver was from the school because he was not selling drugs.

¶ 10      The jurors received verdict forms of guilty and not guilty as to each of the two drug counts. They returned a guilty verdict for possession with intent to deliver and also a guilty verdict for possession with intent to deliver within 1000 feet of a school. The trial court merged the lesser count into the greater and sentenced Toliver to 10 years for possession with intent to deliver within 1000 feet of a school.

¶ 11                                            ANALYSIS

¶ 12      On appeal, Toliver does not challenge the jury's verdict that he possessed a controlled substance with intent to deliver. Rather, Toliver claims that the State had to prove beyond a reasonable doubt not only that the offense occurred within 1000 feet of Lathrop Elementary School but also—for the first time—that Lathrop Elementary School was used as a school on the date of the offense. The State responds that the testimony of the prosecution witnesses did establish that the offense took place within 1000 feet of a "school" and that the jury could reasonably infer the building was a school at the time of the offense. The State also presents the alternate argument that the issue whether the school was operational on the date of the offense was a foundational issue involving admissibility and not the sufficiency of the evidence.

¶ 13      Generally, we view a challenge to the sufficiency of the evidence on an element of the charged offense in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Amigon*, 239 Ill. 2d 71, 78 (2010). A reviewing court may overturn a jury's finding only by concluding that no rational trier of fact could have found the requisite elements of the offense proven beyond a reasonable doubt. *Id.*

¶ 14      Toliver's conviction for possession with intent to deliver heroin is a Class 1 felony. 720 ILCS 570/401(c)(1) (West 2012). The separate verdict finding that the drug offense occurred within 1000 feet of a school, a provision of the Illinois Controlled Substances Act (Act), elevated possession with intent to deliver from a Class 1 felony to a Class X felony. 720 ILCS 570/401(c)(1), 407(b)(1) (West 2012).

¶ 15      The Act neither defines what is included in school property nor indicates what proof is required to establish the existence of school property. No statute defines "school" in terms of its function or use. But, in section 407(b)(2) of the Act (720 ILCS 570/407(b)(2) (West 2012)), the legislature intended the words "any school" to refer to "any public or private elementary or secondary school, community college, college or university." (Internal quotation marks omitted.) *People v. Goldstein*, 204 Ill. App. 3d 1041, 1048 (1990). Essentially the same definition for "school" appears in the Criminal Code of 2012. 720 ILCS 5/2-19.5 (West 2012).

¶ 16      In support of his claim, Toliver relies on cases involving narcotics offenses committed within 1000 feet of a *church*. Toliver refers us to *People v. Cadena*, 2013 IL App (2d) 120285, involving narcotics offenses which took place within 1000 feet from a church. The appellate

court found the State failed to prove that the "Evangelical Covenant Church" was being used as a church on the date of the offense. *People v. Ortiz*, 2012 IL App (2d) 101261, ¶¶ 5, 11-12, also cited by Toliver, held that a police officer's testimony of the distance between the drug offense and the church without any "temporal context" and undated photos of a sign on the church announcing its hours of worship were insufficient proof that the church was operational at the time of the offense. These cases do not help Toliver for two reasons.

¶ 17    First, all six subsections of section 407(b) (720 ILCS 570/407(b) (West 2012)), enhance the penalty for prohibited drug violations occurring "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place *used primarily for religious worship*." (Emphasis added.) No similar requirement exists with respect to a school—that the building, structure, or place must be *used primarily* as a school.

¶ 18    Second, section 407(c) specifically states: "Regarding penalties prescribed in subsection (b) for violations committed in a school or on or within 1,000 feet of school property, the time of day, time of year and whether classes were currently in session at the time of the offense is irrelevant." 720 ILCS 570/407(c) (West 2012). No similar saving clause appears in section 407 for churches or houses of worship. It is reasonable to infer that many school buildings are not in use for their intended purpose in the summer vacation months, weekends, or holidays. Nevertheless, they are still "schools" for purposes of the enhancement factor. As this court noted in *People v. Daniels*, 307 Ill. App. 3d 917, 929 (1999), "children tend to congregate on school property even when school is not in session."

¶ 19    The dissent refers to a website announcing that Lathrop Elementary School at 1440 South Christiana Avenue closed at the end of the 2011-12 school year and concludes that on the date of the offense, July 25, 2013, there was no Lathrop Elementary School. The dissent asserts that, while the State was not required to prove that the school was in session on the date of the offense, the State still was required to prove the school existed and was "active" on that date. (The dissent favors the term "active" over Toliver's use of the term "operational.") The dissent concludes that the evidence was insufficient to prove the essential enhancing element.

¶ 20    But, the dissent's focus on the fact that students no longer attend Lathrop Elementary School ignores Lathrop Elementary School's identity as a school, which remains intact. Among the indicia are Lathrop's (i) ownership and maintenance (Chicago Public Schools of which we may take judicial notice, just as does the dissent has taken judicial notice), (ii) purpose, (iii) design, (iv) site characteristics (including school grounds), and (iv) its recognized place within the surrounding neighborhood, as testified to by two State witnesses.

¶ 21    On the date of the offense, the building at 1440 South Christiana Avenue, as the State established, was known as "Lathrop Elementary School." Whether closed to students, temporarily or permanently, the structure still exists as a school building to draw neighborhood children to its premises. And, its current status has no consequence; otherwise, it would have been pointless for the legislature to have decreed that "the time of day, time of year, and whether classes were currently in session at the time of the offense is irrelevant." The legislation sought to prevent illicit drug transactions from taking place where children congregate. Children may be attracted to school property at all hours of the day, at all times of the year, whatever its status.

¶ 22    The dissent presents a strawman hypothetical—Navy Pier was once home of a two-year undergraduate branch of the University of Illinois and, under our reasoning, would still be

considered a school. This does not advance the dissent's argument because Navy Pier was then and is now a pier and was not then and is not now a school building.

¶ 23    As Toliver concedes, the State need not establish "the time of day, time of year and whether classes were currently in session at the time of the offense is irrelevant." Toliver was tried by a jury, and the jury was so instructed. Without defense objection, the trial court gave Illinois Pattern Jury Instructions, Criminal, No. 17.20 (4th ed. 2000) (hereinafter, IPI Criminal 4th). That instruction informed the jury that to establish the enhancement factor, it must be proven "[t]hat the possession with intent to deliver took place on a public way within 1000 feet of the real property comprising a school regardless of the time of day time of year whether classes were currently in session at the time." *Id.* Nothing instructed that the jury must find the school was "operational" or "active" on July 25, 2013, the date of the offense. The enhancement factor seeks to avoid exposing children to narcotics transactions conducted at or near schools. IPI Criminal 4th No. 17.20 was offered and given without objection by the defense and informed the jury that the school need not have been in session on the day or even the time of year when the offense occurred.

¶ 24    In addition to *Cadena* and *Ortiz*, Toliver relies on *Boykin*, 2013 IL App (1st) 112696. There, the defendant was convicted in a bench trial of delivery of a controlled substance within 1000 feet of a school. A panel of this court on which the dissenter participated concluded that the evidence at trial was insufficient to establish beyond a reasonable doubt that Our Lady of Peace was a school. In *Boykin*, defendant argued on appeal that the school, Our Lady of Peace, closed nine years before the offense and asked for judicial notice of three newspaper articles and a news release from the archdiocese of Chicago relating to the school's closure. The panel declined to take judicial notice of these items, which had not been presented to or considered by the trial court. Similarly, we decline to consider in this appeal the newspaper article on school closures cited by Toliver**,** which he did not present to the trial court. Where an argument involves matters outside of our record, we cannot properly address it on direct appeal. *People v. Manning*, 334 Ill. App. 3d 882, 893-94 (2002) (citing *People v. Woolley*, 178 Ill. 2d 175, 204 (1997)).

¶ 25    The *Boykin* opinion hinged in part on *Cadena*, where no evidence denoted how the testifying officer would have known the structure was an active *church* on the dates of the offenses. In *Boykin*, two police officers testified the drug transaction took place within 1000 feet of "a school," but no evidence was presented to show how those officers had personal knowledge of the building on the date of the offense. They did not testify they lived in the area or regularly patrolled the neighborhood to allow an inference they had personal knowledge of the building. *Boykin*, 2013 IL App (1st) 112696, ¶ 15. In addition, the evidence failed to show that the building's name included any "signifier" to identify it as a school, *e.g.*, Our Lady of Peace *School*. *Id.* ¶ 16.

¶ 26    Contrary to the dissent's repeated mischaracterizations, the evidence before us differs significantly. Officer Duran testified that he had been assigned to the tenth district for eight years, had conducted surveillance and made arrests in the area, and was familiar with some of the schools in the area of the tenth police district, including Lathrop Elementary School. On an overhead map showing the general vicinity of 3225 West Douglas Boulevard, Duran circled the school building, which was labeled "Lathrop Elementary School." Officer Sandoval, who had been assigned to the tenth district for seven years, also testified to his familiarity with the school's neighborhood, having conducted surveillance or enforcement around 3225 West

Douglas Boulevard "hundreds" of times and having "made about a hundred or so arrests there." He knew from his personal knowledge that Lathrop Elementary School was half a block north and one block east of where he witnessed the narcotics sales.

¶ 27    Did the testimony of Sandoval and Duran raise the reasonable inference that the structure was a school? Reasonable inferences, unlike speculation, depend on the facts in evidence and may support a criminal conviction. "An inference is 'a conclusion as to the existence of a particular fact reached by considering other facts in the usual course of human reasoning.' " *People v. Steading*, 308 Ill. App. 3d 934, 940 (1999) (quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 302.2, at 93 (7th ed. 1999)). When we look at the evidence in the light most favorable to the State, as we must, the reasonable inference drawn from Sandoval's and Duran's testimony indicates that the property indeed is a school.

¶ 28    In affirming a defendant's conviction on two counts of unlawful delivery of a controlled substance within 1000 feet of a church, in *People v. Sims*, 2014 IL App (4th) 130568, the appellate court properly relied on a State witness, a police officer, who testified he had been in Bloomington for 10 years and was assigned to the narcotics unit during the past 5½ years. He stated that for as long as he could remember, the building had been a church. *Id.* ¶ 134. The appellate court noted that the officer's occupation required "spending a lot of time on the streets" and "keeping an eye on neighborhoods." *Id.* ¶ 138. Accordingly, "a rational trier of fact could have believed [the officer's] testimony that he was familiar with the neighborhood *** and that the building at that address was in use as a church on the dates of the drug offenses." *Id.* See also *People v. Morgan*, 301 Ill. App. 3d 1026 (1998) (in prosecution for unlawful delivery of controlled substance within 1000 feet of public park, police officer's familiarity with community sufficient to allow him to testify about status of park).

¶ 29    On appeal, Toliver argues for the first time that the testimony of officers Sandoval and Duran was insufficient to prove that Lathrop Elementary School was operating on the date of the offense. Toliver asserts that the State could have proved that the building was operating as a school by stipulation or by testimony from a "qualified witness" familiar with the school's status, such as the school principal or school district superintendent. The State contends that, while Toliver presents his appeal as a challenge to the sufficiency of the evidence, it is more properly characterized as an argument for lack of proper foundation to admit the testimony of the officers on whether the building was actually a school. Requiring the use of a "qualified witness" is a claim for adequate foundation, an evidentiary issue subject to forfeiture on review. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005). The State asserts this is a theory that Toliver did not advance at trial, and even more tellingly, at trial the defense conceded Toliver was within 1000 feet of a school when he committed the offense.

¶ 30    We agree with the State. Through stipulation and concession to the jury, Toliver waived the State's obligation to prove that Lathrop Elementary School was in fact operating as a school on the date of the offense. In closing argument, the prosecutor reminded the jury that the parties had stipulated to the distance between Toliver's activity and Lathrop Elementary School being 967 feet. Defense counsel's closing argument responded in relevant part to that argument:

> "Now lastly this one thousand feet. What counsel states is correct. We agree that from where Marcus was arrested and the school is under a thousand feet. What we don't agree on[,] Marcus wasn't out there selling drugs. Marcus could have been

arrested in front of the school. It doesn't matter. He wasn't selling drugs. The footage between where he was arrested and the school is irrelevant."

¶ 31    Defense counsel's concession, that Toliver was within 1000 feet of "the school" on the date he was arrested, had the same effect as the parties' stipulation—it removed from dispute the issue of the location of the offense as an enhancing factor. "A criminal defendant may waive, by stipulation, the need to prove all or part of the case that the State has brought against him." *People v. Washington*, 343 Ill. App. 3d 889, 900 (2003). See also *People v. One 1993 Lexus*, 367 Ill. App. 3d 687, 691 (2006) (citing *People v. Rucker*, 346 Ill. App. 3d 873, 892 (2003)). By conceding the issue, counsel demonstrated the intent of the defense to eliminate that issue from the case and focus on another aspect of the defense—that Toliver was doing nothing illegal while in close proximity to the school. It is well-settled that a party forfeits his or her right to complain of an error on appeal where to do so would be inconsistent with his or her position in the trial court. *In re E.S.*, 324 Ill. App. 3d 661, 670 (2001) (citing *McMath v. Kaholi*, 191 Ill. 2d 251, 255 (2000)). Toliver has forfeited his right to challenge that part of the State's case, which he conceded in the trial court.

¶ 32    The dissent suggests that the "practical effect" of our decision will be "to allow the Class X enhancement where a sale occurs within 1000 feet of vacant, unoccupied buildings that a witness calls a school without any proof that students go to that location to be educated." Again, whether the school is "active" or "operational" is irrelevant because the statute does not require proof that the school is "active" or "operational." Toliver stipulated and conceded that what the dissent calls a "vacant, unoccupied building" was a vacant, unoccupied *school* building, and two witnesses testified for the State that it was a school building. Under the doctrine of invited error, an accused may not stipulate at trial that a school is a school and then argue on appeal that the stipulation was in error. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004); *People v. Carter*, 208 Ill. 2d 309, 319 (2003). The "practical effect" of the dissent is to rewrite the statute by incorporating new elements and by making the State prove, after the rewrite, that the school is "active" or "operational."

¶ 33    We conclude the evidence at trial established beyond a reasonable doubt the sentence enhancement provision, namely, that Toliver committed the drug offense within 1000 feet of a school and the State was not required to prove that the school was "operational" or "active" on the date of the offense.

¶ 34                    Additional Credit for Presentence Custody

¶ 35    Toliver also argues, and the State concurs, he is entitled to eight days of additional credit for presentence custody. Toliver was arrested on July 25, 2013, and was sentenced on March 25, 2014. We agree with Toliver's calculation that he spent 243 days in custody excluding the sentencing date.

¶ 36    Under our authority under Illinois Supreme Court Rule 615(b)(1) to modify a judgment, we direct the clerk of the circuit court to correct the mittimus to reflect Toliver is to be credited with eight additional days for a total credit of 243 days of presentence credit.

¶ 37    We affirm the judgment of the circuit court in all other respects.

¶ 38    Affirmed; mittimus corrected.

¶ 39         PRESIDING JUSTICE PIERCE, dissenting.

¶ 40         In 2023 there will be thousands of 10-year grammar school reunions and none of those will be for the 2013 class from Lathrop Elementary School. In 2023 Marcus Toliver will be completing his 10-year sentence for selling drugs within 1000 feet of a school that did not exist. Long after that 10-year period he will be considered a Class X offender, and he will forever suffer the more severe criminal and economic consequences of that classification. I respectfully dissent and write separately to express a fundamental disagreement on the main issue in this case: was this drug sale within 1000 feet of a school?

¶ 41         This majority conclusion affirming Class X sentencing in this case cannot logically, legally, or justly be reconciled with the unassailable fact that, on February 22, 2012, the Chicago board of education approved the recommendation of its CEO "that the Board *close* Lathrop effective June 30, 2012, *reassign* Lathrop's returning students to Johnson [school], and assign portions of Lathrop's attendance area to Lawndale and Johnson [schools]. *** Lathrop's Local School Council will be *dissolved* effective June 30, 2012 upon closing of Lathrop. *** All faculty and staff members currently assigned to Lathrop will be *displaced* at the end of the 2011-2012 school year in accordance with Board policies and any collective bargaining agreements." (Emphases added.) Chicago Board of Education Report, *available at* www.cpsboe.org/content/actions/2012_02/12/12-0222-EX5.pdf. The words "closed," "dissolved," "reassign," and "displaced" do not conjure an inference that children are congregating or are drawn to a location of educational instruction.

¶ 42         Thus, on the date of this offense, July 25, 2013, by any common sense reasoning, there was no Lathrop Elementary School. There were no students that recently completed the 2012-13 school year. There were no Lathrop students that were on summer recess or that would return from summer recess to start the 2013-14 school year. Lathrop Elementary School simply did not exist immediately before, during, or after this drug offense.

¶ 43         To sustain a conviction for possession of narcotics with intent to deliver, the State must prove that defendant knew of the narcotics, that the narcotics were in defendant's immediate possession or control, and that defendant intended to deliver them. 720 ILCS 570/401(c)(1) (West 2012); *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 13. Possession of narcotics with intent to deliver under this particular section, a Class 1 felony, can be enhanced to a Class X felony if the violation occurs, *inter alia*, "within 1,000 feet of the real property comprising any school." 720 ILCS 570/407(b)(1) (West 2012). Where the State seeks such an enhancement, as it did in this case, it must prove beyond a reasonable doubt that the building in question was a "school" on the date of the offense. *People v. Sims*, 2014 IL App (4th) 130568, ¶ 106.

¶ 44         To prove this enhancement element, "[o]ne might think that because several additional years of imprisonment could be riding on that issue [citations], the State would 'elicit[ ] testimony from someone affiliated with the [school].' " *Id.* (quoting *People v. Ortiz*, 2012 IL App (2d) 101261, ¶ 11). Not according to the majority. The State could not put a young person on the witness stand to say she was a student at Lathrop before, during, or after the date of this offense. The State could not provide testimony from any teacher, administrator, or other employee that would establish or create a reasonable inference that before, during, or after the date of this offense there was a Lathrop Elementary School. Nor could the State produce any parent to testify that their child attended Lathrop before, during, or after the date of this offense.

¶ 45    I have no doubt that at the time of trial, the State was aware Lathrop was closed 13 months before this offense and that it knew it could not present any evidence from a student, parent, teacher, or employee of the Chicago board of education that would prove that there was a "school" within 1000 feet of this offense. Unable to meet its burden, the State merely presented two police officers who identified a building as "Lathrop Elementary School." Officer Sandoval testified that the drug transaction occurred within 1000 feet of Lathrop Elementary School. Officer Duran testified that he worked in the district for eight years and was familiar with some of the schools in the area including Lathrop Elementary School. Despite the fact that both officers testified and used the name "Lathrop Elementary School," there is no temporal evidence to support the majority's finding that Lathrop Elementary was a school or that it even existed on the date of the offense. Not one question was asked about whether any activity of any kind took place at any time at Lathrop from which a reasonable jury could infer that there was a school, as commonly understood by a person of average intelligence, in the area. At best, the officers merely identified a building and gave it a name. This cannot be considered proof beyond a reasonable doubt (see *Cadena*, 2013 IL App (2d) 120285, ¶ 16 (finding the evidence insufficient where an officer's testimony was "without temporal context")), nor is it constitutionally sufficient to prove an enhancement element. I take serious issue with giving the State a pass on proving a required element of a sentencing enhancement that results in a defendant being classified as a Class X offender. Our system of justice and the requirement of proof beyond a reasonable doubt demand more. This court should insist that the State meet its burden of proof.

¶ 46    The majority frames the issue in this case as whether the State needs "to establish that a structure is a 'school' on the day of the offense" and avoids the answer by "finding no authority requiring the State to prove the school was 'operational.' " The majority avoids answering the question by focusing on whether there needed to be proof the school was "operational" ("operational, *adj*. 1. Engaged in operation; able to function." Black's Law Dictionary 1119 (7th ed. 1999)) to make this defendant subject to Class X sentencing. But before something can be operational, it must first exist.

¶ 47    The majority attempt to justify the conclusion that this drug sale occurred near a "school" is simply not persuasive. Defense counsel did not "stipulate" that the sale took place near a school. The stipulation was that the State's witness took measurements that showed the sale occurred within 1000 feet of Lathrop Elementary School. Defense counsel did not concede in closing argument (which is not evidence) that there was a school nearby, he argued that it did not matter that the sale took place near a school because his client was not the drug seller. Also, his statement during closing argument (again, not evidence) was of the same import as the two police officers who simply used the name "Lathrop Elementary School." The majority argument that the "identity" of Lathrop Elementary School remained intact (*supra* ¶ 20) is remarkable simply because there was no evidence of Lathrop's ownership, maintenance, purpose, design, site characteristics, or recognized place within the neighborhood: two police officers merely testified that the sale occurred near Lathrop Elementary School. They said nothing more. If these characteristics are important to the majority, then where is the evidence of these factors? The point is: prove there was a school, not who owns, operates, maintains, or designed it.

¶ 48    The term "school" is not defined in the Act. However, in *People v. Young*, 2011 IL 111886, our supreme court held that a "preschool" was not within the definition of a "school" as

intended under section 407 of the Act. Citing *People v. Goldstein*, 204 Ill. App. 3d 1041, 1045 (1990), the court observed "the meaning of 'school' to be uncertain since, if interpreted literally, the term could include an endless number of possible educational facilities." *Young*, 2011 IL 111886, ¶ 13. Our supreme court agreed with the conclusion reached in *Goldstein* that "the legislature intended the words 'any school' in section 407(b)(2) to refer, as they do elsewhere in Public Act 84-1075, to 'any public or private elementary or secondary school, community college, college or university.' " (Internal quotation marks omitted.) *Id.* (quoting Pub. Act 84-1075 (eff. Dec. 2, 1985)).

¶ 49    The Act does provide that "the time of day, time of year and whether classes were currently in session at the time of the offense is irrelevant." 720 ILCS 570/407(c) (West 2012). There would be no need for this provision if the legislature intended for nonexistent educational facilities to be considered a "school." This provision would be unnecessary if the legislature intended to impose an enhanced sentence for drug sales in the vicinity of a location where no school exists because students would never attend class (regardless of the time of day, time of year, or during a recess period) where no school exists.

¶ 50    In *People v. Boykin*, 2013 IL App (1st) 112696, we held that an officer's testimony that the distance between a drug transaction and a school that had a sign posted with the name "Our Lady of Peace" and another officer's testimony that the offense was next to a school named "Our Lady of Peace school" was insufficient because there was no evidence to allow for an inference that the officers "had personal knowledge as to whether the school was in operation on the date of the offense" and "there were no questions asked at trial regarding whether Our Lady of Peace was an 'active' school." *Id.* ¶¶ 2-3, 15. *Boykin* relied on *People v. Ortiz*, 2012 IL App (2d) 101261, where police officers testified that the distance between a drug transaction and "Emmanuel Baptist Church" was less than 1000 feet, and the identification of photographs of the church, was found to be insufficient to show that the offense occurred within 1000 feet of a church, reasoning that we had "no way of knowing whether the Emmanuel Baptist Church *existed*" on the date of the drug transaction. (Emphasis added.) *Id.* ¶ 11.

¶ 51    The majority dismisses *Boykin* stating that *Boykin* refused to take judicial notice of nine-year-old newspaper articles stating Our Lady of Peace school was closed. However, on the merits, we found the testimony in *Boykin* merely amounted to calling a location a "school," and without more, that evidence was not enough to prove the essential enhancing element. "Further, there was even less evidence presented [here] than in [*Cadena*, 2013 IL App (2d) 120285], as there were no questions asked at trial regarding whether Our Lady of Peace was an 'active' school." *Boykin*, 2013 IL App (1st) 112696, ¶ 15. I was a panel member in *Boykin*, and I am certain we used the adjective "active" to convey the common sense understanding that merely referring to a location as a "school" did not allow for an inference that it was "an institution for teaching of children" or "a school building." Merriam-Webster's Collegiate Dictionary 1111 (11th ed. 2006). This obvious (to me) finding in *Boykin* was recently followed by this court in *People v. Sipp*, 2016 IL App (1st) 140898-U, ¶ 20 ("While classes need not be in session, *the State was still required to prove that the school existed on the date of the offense*. *Boykin*, 2013 IL App (1st) 112696, ¶ 16." (Emphasis added.)).

¶ 52    The conclusion that the legislature intended this enhancement to apply to drug sales near closed schools because children may be attracted to school property at all hours throughout the year "even following a school closure" is not supported by any precedent or legislative statement. The practical effect of this finding is to allow the Class X enhancement where a sale

occurs within 1000 feet of vacant, unoccupied buildings that a witness calls a school without any proof that students go to that location to be educated. This does rewrite the statute or incorporate new elements into the existing sentencing enhancement. It is recognition of a common sense application of the statute. If the majority is correct, then any drug sale on or near Navy Pier, the most popular tourist attraction in the Midwest, falls within this school sentencing enhancement because it was the home of the University of Illinois-Chicago until the mid-1960s but is now closed. According to the majority, a school is still a school even when it is closed, shuttered, and no longer in operation. The legislature did not intend this result.

¶ 53    The majority's observation that section 407(b) enhances the penalty for drug violations near religious sites "or other building[s], structure[s], or place[s] used primarily for religious worship" (720 ILCS 570/407(b) (West 2012)) is meaningless in this case because no "primary use" qualifier exists when considering whether a drug sale is near a school under section 407(b)(1). 720 ILCS 570/407(b)(1) (West 2012). Furthermore, as previously stated, with respect to violations of section 401(c)(1) and section 407(b)(1), "the time of day, time of year and whether classes were currently in session at the time of the offense is irrelevant." 720 ILCS 570/407(c) (West 2012). The majority's reasoning that because section 407(c) specifically provides that "the time of day, time of year and whether classes were currently in session at the time of the offense is irrelevant" in a prosecution for drug sales near a school is a reasonable statutory provision because schools are not "in use for their intended purpose in the summer vacation months, weekends, or holidays" is unassailable. *Supra* ¶ 18. Unassailable and completely irrelevant in this case because Lathrop Elementary School did not exist on the date of this offense.

¶ 54    The defense in this case was that the police caught the wrong man. There can be no question that, had the trial court been advised that Lathrop Elementary School was officially, formally closed, its school council dissolved, and its faculty and staff displaced 13 months before this crime, it would not have allowed this enhancement element to be submitted to the jury. In my opinion, this is a substantial defect that may be noticed under Illinois Supreme Court Rule 615(a) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). There can be no argument that, had the jury heard *any* evidence that Lathrop Elementary School closed 13 months before this offense, it would not have found beyond a reasonable doubt that a drug sale took place within any distance of a school regardless of the time of day or time of year. In my opinion, once a school is closed, it does not exist, it is no longer an "active" school (see *Boykin*, 2013 IL App (1st) 112696, ¶ 15), it is a vacant building no different than any other vacant building in the area at the time of the offense. The fact that the defense theory was "they got the wrong guy" did not eliminate the necessity of proof that Lathrop Elementary School did in fact exist to impose Class X sentencing. While drug dealing cannot be condoned, every sentencing enhancement for drug dealing near a school requires proof beyond a reasonable doubt. While under section 407(b)(1) and (c), the State was not required to prove that school was in session on the date in question, the State was still required to prove that the school existed and was "active" on the date of the offense, which they failed to do. See *Boykin*, 2013 IL App (1st) 112696, ¶ 16. Whether the school is in fact an "active" or a "former" school is an entirely different question than whether the school is "operational" ("operational, *adj*. 1. Engaged in operation; able to function." Black's Law Dictionary 1119 (7th ed. 1999)).

¶ 55       At the very least, the rule of lenity should be invoked because it can be argued there exists an ambiguity in whether the legislature intended enhanced penalties for drug sales near schools to include drug sales near locations that were at one time schools, as commonly understood, and that have been closed prior to the offense in question. *People v. Gutman*, 2011 IL 110338. "If a statute increasing a penalty or punishment is capable of two constructions, the one which operates in favor of the accused is to be adopted; such a statute is highly penal and should not be extended in its application to cases which do not, by the strictest construction, fall within its terms." *People v. Carlock*, 102 Ill. App. 3d 1100, 1102 (1981).

¶ 56       Because the State failed to present competent evidence to prove beyond a reasonable doubt that Lathrop Elementary School existed on the date in question, the evidence was insufficient to support defendant's conviction. We should not give the State a precedent that it will surely use in the future to undermine the fundamental obligation to prove every element of an offense beyond a reasonable doubt. The State will cite the majority opinion to support Class X sentencing in future prosecutions where drug offenses occur near shuttered schools when there is no legislative justification to do so. Accordingly, I would reduce defendant's conviction to a Class 1 delivery of a controlled substance and remand for resentencing.