2021 IL App (2d) 200621-U
No. 2-20-0621
Order filed October 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CF-1219 |
| | ) | |
| DAVID A. BERTHA, | ) | Honorable |
| | ) | Mark R. Gerhardt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    On appeal from his conviction for resisting a peace officer, namely a court security officer at the Kane County courthouse, (1) defendant did not offer a complete record supporting his argument that the officer perjured himself at trial, and (2) defendant's argument that the trial court erred in not addressing his motion for discovery of surveillance footage failed because he only speculated what the footage might depict and offered no reason to believe that such footage—assuming it was as he claimed—would be material to guilt or punishment.

¶ 2    Following a jury trial in the circuit court of Kane County, defendant, David A. Bertha, was found guilty of resisting a peace officer (720 ILCS 5/31-1(a) (West 2018)) but not guilty of aggravated assault of a peace officer (720 ILCS 5/12- 2(b)(4.1) (West 2018)).  Defendant appeals

*pro se*, arguing that the State knowingly used perjured testimony and failed to disclose evidence favorable to the defense. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was initially charged by complaint on June 20, 2019, with a single count each of aggravated assault of a peace officer and resisting a peace officer. The charges were based on an incident that allegedly took place at the Kane County courthouse on June 20, 2019. On July 3, 2019, a grand jury returned an indictment charging the same offenses. The alleged victim of the offenses was court security officer Rick Malott. According to the indictment, defendant committed aggravated assault of a peace officer in that he:

> "knowingly engaged in conduct which placed another, [Malott], in reasonable apprehension of receiving a battery in that he approached [Malott] and screamed at him, puffed out his chest, lifted his arms toward [Malott] while he was less than two feet from [Malott], knowing [Malott] to be a peace officer performing his official duties."

¶ 5    The indictment charged that defendant committed resisting a peace officer in that he:

> "knowingly obstructed the performance of [Malott] of an authorized act within his official capacity, being the lawful order to back up, knowing [Malott] to be a peace officer engaged in the execution of his official duties in that he continued to move closer to [Malott] after being ordered to back up on three separate occasions."

¶ 6    On July 9, 2019, defendant, who was then appearing *pro se*, filed a motion to discover surveillance footage of defendant taken at the Kane County courthouse on the date of the incident. During a court appearance on July 12, 2019, the prosecutor indicated that the Kane County courthouse's video surveillance system did not cover the area where the incident took place. On July 17, 2019, defendant filed a "Motion to Appoint a Special Prosecutor and Discover Evidence."

As relevant here, the motion indicated that defendant had requested "all video surveillance footage from the time he entered the [courthouse]." He maintained that "[i]t strains credulity to believe that no video surveillance footage of [defendant] in the Kane County courthouse from June 20, 2019, exists." In its August 15, 2019, response to that motion, the State indicated that the Kane County courthouse had surveillance cameras covering the entrance to the courthouse but that video from the date of the incident might not have been preserved.

¶ 7    The trial court subsequently appointed counsel to represent defendant. Defendant later retained counsel. On March 27, 2020, counsel withdrew defendant's pending *pro se* motions, including the motion to discover surveillance footage.

¶ 8    At trial, Sandy Madigan, a court security officer employed by the Kane County Sheriff's Department, testified that she screened defendant when he arrived at the entrance to the Kane County courthouse at about 1:30 p.m. on the date of the incident. During the screening, a prohibited item was found in defendant's wallet and was confiscated. Defendant then proceeded upstairs. Malott was present in the screening area when this occurred. About 5 to 10 minutes later, Madigan heard yelling coming from the third floor and she saw defendant and Officer Malott standing less than three inches from each other.[1]

¶ 9    Malott, currently a sergeant with the Kane County Sheriff's Department, testified that, on the date of the incident, he was assigned to the Kane County courthouse as a court security officer. Shortly before 1:30 p.m., defendant came into the courthouse. Defendant's belongings were x-rayed several times to identify an item. The item was confiscated, and defendant was permitted to

---

[1] The record reflects that the courthouse has a rotunda, so the upper levels are visible from the entrance level.

enter the courthouse. Asked how defendant reacted when the item was confiscated, Malott responded, "Not in a very pleasant manner." Madigan was primarily responsible for screening defendant. Malott was standing about seven feet away from Madigan at the end of the screening area where items come through the X-ray machine.

¶ 10    Malott later went to the third floor to use the restroom and to check on a court proceeding that had just gotten underway. After using the restroom, he stood against a railing opposite a courtroom that was in use. Defendant was sitting on a bench on the third floor. Defendant then walked over to where Malott was standing and stood within two feet of him. Malott twice asked defendant if he could help him with anything. Defendant did not respond. Malott then told defendant he could not stand so close to him. Defendant did not move.

¶ 11    Malott started to back away from defendant, but defendant followed him, saying that he could stand wherever he wanted. When Malott again told defendant that he could not stand so close, defendant said, " 'What the fuck you gonna do?' " Malott told defendant that, if he continued to follow him, Malott would arrest defendant for assault. Defendant said that Malott could not arrest him. At one point, defendant asked Malott, " 'Do you know who the fuck I am?' " Defendant also called Malott a "white, racist faggot with a GED."

¶ 12    Malott yelled to Madigan, asking her to summon Lieutenant Fletcher for assistance. At that point, defendant became agitated and threatened to kill Malott and his family. Malott started to walk away. He told defendant that he was leaving and instructed defendant to stay where he was. Malott backed away from defendant and walked toward the stairwell, but defendant followed him. Defendant got within arm's reach of Malott, and Malott pushed defendant away. However, defendant came at Malott again. His chest was puffed out. Malott felt threatened. He pushed defendant away again and ordered defendant to stay away. Defendant came at Malott a third time,

at which point Malott told defendant that he was under arrest. Malott was able to take defendant into custody.

¶ 13    Darren Smoger testified that, on the day of the incident, he was working at the Kane County courthouse as a bailiff. At about 1:30 p.m., he took the elevator to the third floor. When he arrived, he observed defendant and a court security officer standing very close together. The officer told defendant three or four times to step back. Defendant would step back, but then "get right back up into his face."

¶ 14    Lloyd Fletcher testified that he was employed by the Kane County Sheriff's Department as a lieutenant of court security. He testified that, because of the age of the Kane County courthouse, security cameras could not be installed on the second, third, or fourth floors. There were cameras on the first floor in the rotunda and screening area. There were also cameras pointed at a holding cell and on the exterior of the courthouse.

¶ 15    Fletcher testified that, at about 1:30 p.m. on the date of the incident, he was in his office on the second floor of the courthouse. He heard a female voice on his radio and then he heard loud noises in the rotunda area. He stepped out of his office and went to the railing. He could not tell where the noise was coming from. He first looked down, then looked up to the third floor. He saw Malott and defendant. Fletcher ran upstairs. When he got there, Malott had defendant in handcuffs.

¶ 16    After the jury returned its verdicts, defendant filed a *pro se* motion to vacate his conviction of resisting a peace officer. Defendant requested that defense counsel be permitted to withdraw, and the request was granted. Thereafter, defendant proceeded *pro se* with the public defender as standby counsel. In his motion to vacate, defendant argued that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over surveillance footage. Defendant also argued

that Malott's written report of the incident conflicted with the report of a sheriff's deputy who investigated the incident. The trial court denied the motion. The court sentenced defendant to a 90-day jail term. Defendant filed a timely notice of appeal.

¶ 17                                    II. ANALYSIS

¶ 18    Defendant first argues that the State knowingly used perjured testimony against him. Defendant argues that Malott's testimony conflicted with the grand jury testimony of the sheriff's deputy who investigated the incident and related Malott's account of the incident to the grand jury. According to defendant, the deputy told the grand jury that defendant aggressively approached Malott, yelling and flailing his arms, whereas Malott testified at trial that defendant did not speak when he approached. Also, the deputy told the grand jury that defendant threatened Malott and his family after being placed in handcuffs. Malott testified at trial that defendant made the threat before being placed in handcuffs.

¶ 19    We have recently observed:

> "The State violates due process by obtaining a conviction through use of evidence that its representatives know to be false. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Even where the State does not solicit false evidence, the State may not allow such evidence to 'go uncorrected when it appears.' *Napue*, 360 U.S. at 269. These principles apply equally where the false evidence goes only to the issue of witness credibility. *Napue*, 360 U.S. at 269. When asserting a due process violation, a defendant bears the burden to establish by clear and convincing proof that the State used perjured testimony in the manner proscribed by *Napue*. *People v. Veal*, 58 Ill. App. 3d 938, 964 (1978). If the defendant meets that initial burden, the State must then 'show beyond a reasonable doubt that the perjured testimony did not contribute to [the defendant's] convictions.' *Veal*, 58 Ill. App. 3d at 964.

'A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict.' *People v. Olinger*, 176 Ill. 2d 326, 349 (1997). This is equivalent to the harmless error standard. *Olinger*, 176 Ill. 2d at 349." *People v. Perkins*, 2020 IL App (2d) 170963, ¶ 40.

¶ 20 We are unable to review defendant's argument. Defendant's argument is premised on the testimony presented to the grand jury. However, the record on appeal does not contain a transcript of that testimony. "Where an argument involves matters outside of our record, we cannot properly address it on direct appeal." *People v. Toliver*, 2016 IL App (1st) 141064, ¶ 24. Defendant included a grand jury transcript in the appendix to his brief. However, that is not a proper way to supplement the record on appeal. *People v. Williams*, 2012 IL App (1st) 100126, ¶ 27.

¶ 21 Defendant next argues that the State violated *Brady* by failing to turn over the security camera footage that he requested. Under *Brady*, the State is obligated to disclose evidence that is favorable to the defense and material to guilt or punishment. *People v. Harris*, 206 Ill. 2d 293, 311 (2002) (citing *Brady*, 373 U.S. at 87). Our supreme court has held:

"A *Brady* claim requires a showing that: (1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either wilfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment." *People v. Beaman*, 229 Ill. 2d 56, 73-74 (2008).

We have observed that "[m]ateriality requires a showing that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *People v. Rincon*, 387 Ill. App. 3d 708, 727 (2008) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

¶ 22    The State argues that defendant forfeited this issue because his attorneys withdrew his *pro se* motions for discovery of the surveillance footage. Defendant responds, *inter alia*, that, because the trial court erred in refusing to hear his *pro se* motions before counsel withdrew them, there was no forfeiture. The trial court reasoned that it was not obligated to hear defendant's *pro se* motions, because, while defendant was still proceeding *pro se*, he failed to comply with an order that he submit to a psychiatric evaluation. Defendant contends that he had a constitutional right to refuse "treatment" and cannot be penalized for exercising that right. Whether forfeited or not, however, the issue is without merit.

¶ 23    The record is clear that there were no security cameras on the third floor of the courthouse where the incident between defendant and Malott took place. The only footage of defendant that might have been available was of defendant's initial screening when he entered the courthouse. Defendant provides no reason to believe such footage would have been favorable to him or material to his guilt or punishment. Defendant asserts that the footage would have shown that, contrary to Malott's testimony, he was not at the end of the screening area when defendant entered the courthouse. According to defendant, Malott was in a "closed-door room behind Officer Madigan viewing surveillance footage of [defendant] as he entered the building." Defendant asserts that Malott came out of that room while Madigan was x-raying defendant's wallet and he stood behind her. Furthermore, according to defendant, the footage would have shown that defendant was not angry about having an item confiscated from him. Defendant also suggests that the footage would have somehow supported a defense theory that Malott had abandoned his post at the screening area to conduct unauthorized surveillance on defendant. Even assuming, *arguendo*, that footage such as defendant describes would have been material within the meaning of *Brady*, the basic flaw in defendant's argument is that it is purely hypothetical. There is simply

no basis in the record to believe that security camera footage, if preserved, would have been as defendant describes it. Defendant's bare assertion of what the footage hypothetically might have shown cannot be the basis for finding that its nondisclosure was a *Brady* violation.

¶ 24                                    III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 26    Affirmed.