# Illinois Official Reports

## Appellate Court

---

### *People v. Hamerlinck*, 2018 IL App (1st) 152759

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRENT HAMERLINCK, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-2759 |
| Filed | March 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-21868; the Hon. Jeffrey L. Warnick, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Benjamin Wimmer, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Sari London, and Christine Cook, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice McBride concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant Trent Hamerlinck was convicted after a bench trial of two counts of aggravated driving under the influence of alcohol (DUI). The two counts charged different minimum levels of blood-alcohol content (BAC). After considering factors in aggravation and mitigation including defendant's four prior DUI convictions, the trial court sentenced him to two concurrent five-year sentences with the Illinois Department of Corrections (IDOC).

¶ 2    On this appeal, defendant claims, first, that the trial court erred in admitting his hospital records as evidence of his BAC level. Although defendant concedes on appeal that he failed to raise this issue in the court below and thus forfeited this issue for our review, he asks us to review the issue under the plain error doctrine, which permits a reviewing court to review unpreserved errors under certain circumstances. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). However, as we explain in more detail below, we do not find this claim persuasive.

¶ 3    Second, defendant claims, and the State agrees, that his aggravated DUI convictions violate the one act, one crime rule since they are based on the same physical act of driving. *People v. Artis*, 232 Ill. 2d 156, 165 (2009) ("Multiple convictions are improper if they are based on precisely the same physical act."). Count I charged a BAC level of over 0.08, while count III charged a BAC level of over 0.16. Thus, we vacate his conviction and sentence on count I. *In re Samantha V.*, 234 Ill. 2d 359, 375 (2009) (the trial court violated the one act, one crime rule when it found defendant guilty of two counts of aggravated battery based on the same battery). Neither defendant nor the State asks us to remand for resentencing, so we do not order it.

¶ 4    For the following reasons, we affirm defendant's conviction and sentence on count III for aggravated DUI with a BAC level of over 0.16.

¶ 5                                    BACKGROUND

¶ 6    Since the only issue on appeal concerns the admission of defendant's hospital records as proof of his BAC level, we focus on the facts surrounding this single issue.

¶ 7    This case arises from a motor vehicle accident at the intersection of Dempster Street and Shermer Road in Morton Grove at 11:30 p.m. on July 5, 2012. The collision occurred between a silver Lexus and a blue Nissan Rogue. Although defendant argued in the court below that he was a passenger in the Lexus rather than its driver, he does not raise that issue again on appeal. Irina Tsyrkina, the driver of the Nissan, sustained injuries to her legs as a result of the accident. After the accident, defendant was charged with multiple counts of driving while intoxicated and driving on a revoked license.

¶ 8    Prior to trial, the State filed a motion *in limine* asking the trial court to take judicial notice of several facts, specified below. On the record, the prosecutor stated that he had provided a copy of the State's motion to defense counsel, who confirmed receipt. Defense counsel added, "there is no objection to that, Judge." The trial court stated, "So the Court will take judicial of that as an agreement by the parties as well."

¶ 9    The State's motion stated in relevant part:

> "2. Defendant's blood was taken at Lutheran General Hospital Emergency Room on July 6, 2012.

3. The People expect that the evidence will show that defendant's ethanol in serum blood was 306 milligrams per deciliter.

4. Pursuant to the Illinois Administrative Code and *People v. Olson*, 388 Ill. App. 3d 704 (2nd Dist. 2009), the People ask this Court to take judicial notice of the conversion of serum blood to whole blood. Section 1286.40 of chapter 20 of the Administrative Code instructs that '[t]he blood serum plasma alcohol concentration result will be divided by 1.18 to obtain a whole blood equivalent.' 20 Ill. Adm Code Section 1286.40.

5. Using the serum to whole blood conversion described in the Administrative Code, the People ask this Court to take judicial notice that defendant's whole blood equivalent result is .259 grams per deciliter.

WHEREFORE, the People request that this Honorable Court, pursuant to our higher court's rulings, take judicial notice of the converted whole blood amount at trial."

Thus, per paragraph 5, the State asked the trial court "to take judicial notice that defendant's" ethanol in whole blood was ".259 grams per deciliter," and the trial court took judicial notice and found that it was an agreement[1] between the parties as well.

¶ 10 At the start of the bench trial, the prosecutor stated in its opening, without objection, that defendant had his blood drawn at the hospital immediately after the accident and the result showed a 0.259 BAC. In his opening, defense counsel argued primarily that the State lacked proof that defendant was the driver, as opposed to a passenger, of the Lexus. Defense counsel further stated that "[t]he rest is going to be evidence of what examination was conducted on our client, if and when a blood draw was drawn, if it was drawn properly."

¶ 11 Ralph Nartatez testified that he was a registered nurse and had been employed in the emergency room of Lutheran General Hospital for 11 years. In the early morning hours of July 6, 2012, when defendant was admitted, Nartatez was "the charting nurse" who, in fact, documented his treatment. After Nartatez identified defendant in court, he testified that the records would aid his testimony in recalling "the chain" of events. The prosecutor then moved to admit defendant's medical records as a business record, which were marked as People's Exhibit No. 1. The trial court asked defense counsel, "Any objection?" Counsel replied, "Judge, no. I believe the foundation was laid." The trial court then stated, "Very well. Okay. They are so admitted."

¶ 12 Nartatez testified that, after defendant was admitted, he noticed defendant had a strong odor of alcohol on his breath and his speech was slurred. Defendant admitted consuming Percocet. Nartatez testified that a treating doctor ordered a blood draw done, and Nartatez was present when Kim Conway Cisneros drew the blood from defendant. Nartatez testified that he observed Cisneros "label it," which included recording the date and time. Cisneros then sent it

---

[1]The State's motion, which contained the parties' agreement, was not listed in the table of contents at the back of defendant's appellate brief, was not discussed in defendant's statement of facts, and appeared out of chronological order in the record. The table of contents also failed to note the stipulation when it was read into the record by the prosecutor. The State's brief mentioned the document but without providing a record cite for the document or quoting from it. This court wants to assure the parties that it reads every single page of the record and thus will find documents, even if they are out of order, not listed, or not discussed.

to a lab in the hospital by means of "a tube station." Nartatez testified, without objection, that the results of defendant's blood test were "memorialized and recorded" in his medical records, specifically, in People's Exhibit No. 3, which was page 63 of the medical records already admitted as part of People's Exhibit No. 1.

¶ 13　　People's Exhibit No. 3, or page 63, is a continuation from page 62 of a list of "lab results" labeled with the following date and time: "07/06/12 00.20." Page 63 contains defendant's name, sex, and date of birth and states, among other things, "Alcohol, Serum 306 mg/dL."

¶ 14　　Nartatez testified as follows concerning People's Exhibit No. 3, and the parties and the court also discussed the scope of the prior stipulation. Since it is primarily the admission of People's Exhibit No. 3 that defendant contests on appeal, we provide Nartatez's testimony concerning it:

"ASSISTANT STATE'S ATTORNEY [(ASA)]: I'm going to show you what has been marked as People's Exhibit 3. What is that?

NARTATEZ: That is the result of the serum alcohol.

* * *

[ASA]: And based upon the testing, what was the alcohol concentration of the blood sample that the defendant gave on July 6th of 2012 in terms of grams per alcohol per 100 millimeters of blood.

NARTATEZ: 306.

***

[ASA]: Your Honor, I would ask that—People's 1 has already been admitted into evidence, which is the medical records. I would ask that People's 3 be put in as just the lab, which is part of People's 1.

THE COURT: Any objection?

DEFENSE COUNSEL: Judge, I object on foundational grounds at this point, yes, I do, Judge. If I could be heard.

THE COURT: You can be heard.

DEFENSE COUNSEL: And, again, we could just clarify this. The result that counsel asked was in millimeters. That is not the case in this—this result is not entered in millimeters, Judge.

[ASA]: I'll rephrase, Judge. I apologize.

DEFENSE COUNSEL: No, that's all right. I mean, I just want to do this—

THE COURT: That's a proper objection. That's exactly right. Thank you.

DEFENSE COUNSEL: I have one more as well, but go ahead.

[ASA]: Let me just rephrase. It was in terms of milligrams?

NARTATEZ: Yes.

[ASA]: Is that correct?

NARTATEZ: Yes, 306.

DEFENSE COUNSEL: My second—I'm sorry?

NARTATEZ: I'm sorry. 306.

DEFENSE COUNSEL: What? 306 what? Milligrams or what other measure? Do you know?

NARTATEZ: Milligrams.

DEFENSE COUNSEL: I object on foundational grounds. That is absolutely foundationally not responsible, Judge, and as such should not be admitted.

[ASA]: Judge, if I may have a moment.

THE COURT: Well, the law—according to the law, requires it recorded as grams of alcohol per 100 millimeters of blood.

DEFENSE COUNSEL: Judge, but that's not the measurement that—

THE COURT: Right.

DEFENSE COUNSEL: Or the—that's not the result that the hospital takes. It is not taken in millimeters, and I haven't heard the magic words yet.

THE COURT: That's what I'm wanting to hear.

* * *

[ASA]: I'm showing you what is People's 3. Can you tell the Court specifically what the result was?

NARTATEZ: 306 milligrams.

[ASA]: Per what?

NARTATEZ: Per—I don't know what DL is. I'll be honest with you.

[ASA]: Would that be deciliter or are you—

NARTATEZ: I am not sure. I'm sorry. I'll be honest."

¶ 15        The parties then discussed the prior stipulation. This particular discussion eventually ended, after a five-minute break, with defense counsel withdrawing any objection that he had:

"DEFENSE COUNSEL: Again, I'm going to renew my objection, Judge. He just answered he doesn't know. And based on foundation—you don't have the proper tools to make—even with judicial notice, you cannot make that—

THE COURT: I'm not allowing anything in at this moment. You don't need to continue arguing. ***

[ASA]: Judge, I—what I can do is we can commence and continue until tomorrow, and I'll bring a doctor in for that result if that's what we need to do. ***

***

[ASA]: Judge, the medical records—just for—the medical records are in. They've already been admitted into evidence with no objection. There's also a stipulation with no objection as to the conversion of that BAC or that serum blood that was in the medical records and the—what the conversion is. There's already no objection."

DEFENSE COUNSEL: Judge, there was no objection to the conversion ratio that the Court can apply in determining his blood alcohol serum.

[ASA]: Judge, on No. 3, which counsel stipulated to, it says the People expect the evidence will show that defendant's ethanol in serum blood was 300 milligrams per deciliter. There was a stipulation to that.

DEFENSE COUNSEL: I misunderstood that then, Judge. I'm sorry. I'm very sorry. I didn't read your—."

¶ 16    After defense counsel admitted that he had not read the previously entered stipulation, the trial court sustained his objection and adjourned for five minutes. When the proceedings resumed, Nartatez testified as follows:

> "[ASA]: Sir, I'm showing you People's Exhibit [No.] 3. Can you read what the alcohol sum is?
>
> NARTATEZ: Alcohol serum, 306 milligrams per deciliter
>
> [ASA]: Okay. And DL is commonly what's known as deciliter; is that correct?
>
> NARTATEZ: Yes.
>
> DEFENSE COUNSEL: Judge, I'll withdraw my—
>
> THE COURT: Objection to that?
>
> DEFENSE COUNSEL: Yeah."

¶ 17    Defense counsel stated that he wanted to cross-examine the witness concerning People's Exhibit No. 3, and the trial court admitted it subject to cross-examination.[2] On cross, however, defense counsel did not ask any questions about the blood draw. On redirect, the prosecutor clarified that Conway Cisneros, who drew defendant's blood, was a nurse. The prosecutor also asked, without objection:

> "[ASA]: And at the same time when the defendant said he wasn't the driver he also said that he had not consumed any alcohol; isn't that correct?
>
> NARTATEZ: Yes.
>
> [ASA]: And, in fact, we know that that is not correct because of his blood serum?
>
> NARTATEZ: Result, yes."

¶ 18    At the end of the bench trial, the State confirmed with the trial court that People's Exhibit Nos. 1 and 3 had "already been admitted into evidence," and the trial court confirmed that they had been admitted. The prosecutor then stated, without objection from defense counsel, "Judge, there was that stipulation between the parties. I would also ask to read that into the record." After the trial court stated, "[g]o ahead," the prosecutor read the document that was substantially quoted above. *Supra* ¶ 9.

¶ 19    After hearing the document read into the record, the trial court ruled as follows:

> "THE COURT: Okay. Based upon the—there was no objection to the motion at least by defense previously following—the Court can follow the administrative code and take judicial notice. Based upon the testimony that has been received regarding the grams per deciliter as to that of the blood serum plasma, they can take judicial notice that the blood alcohol concentration of the whole blood equivalent result would be a .259 grams."

¶ 20    After People's Exhibits Nos. 1 and 3 were admitted into evidence, and the stipulation was read into the record without objection, and the trial court agreed to take judicial notice, the State rested.

¶ 21    After the State rested, the defense moved for a directed finding, arguing:

---

[2]As we discuss in the next paragraph, the trial court later confirmed that People's Exhibit No. 3 was admitted.

"DEFENSE COUNSEL: Your Honor, the State has presented several witnesses. And so far, we have heard testimony that my client, [defendant], was tested at a hospital and *his blood alcohol was a 2.50, a little bit more.*

THE COURT: *Right.*

DEFENSE COUNSEL: *All well and good, Judge.* What the State has not done, which is an essential component, which is an element to the offense, is to prove that my client, *while he had this blood alcohol*, was driving or operating either through constructive possession or actual physical control that could be attributed by evidence, was driving with a BAC at that level. The State has failed to do that. The State has utterly failed. They have not brought any credible, and I repeat, any credible evidence whatsoever which beyond a reasonable doubt places my client behind the wheel of a car." (Emphases added.)

¶ 22    Defense counsel further argued "*they were able to establish my client had a breath alcohol concentration over the legal limit*, but they did not, again, did not, establish a prima facie case" that he was the driver. (Emphasis added.)

¶ 23    After the trial court denied defendant's motion, the defense called one witness, Mohammed Rogaria, a taxi driver who testified that he had observed the accident three years earlier and called 911. On direct, Rogaria testified that he observed two people in the Lexus. However, he also testified that he could not observe the driver and that he did not know whether there were more than two people in the Lexus. On cross, Rogaria testified that the passenger and the driver switched seats after the accident. However, he could not identify either the driver or the passenger because he did not observe their faces. On redirect, he testified that he observed only one person, outside of the Lexus, walking from the passenger's side to the driver's side. On recross, he again testified that he observed only one person exiting the Lexus and that this person exited from the passenger side.

¶ 24    In rebuttal, the State called Detective Dennis Johnson who testified that, immediately after the accident, he interviewed Rogaria who identified defendant as the driver of the Lexus and stated that defendant had exited the driver's side.

¶ 25    The State waived its initial closing argument, and the defense proceeded to its closing, in which the defense conceded that the State had proved defendant's BAC level. In closing, defense counsel expressly stated that this fact was not in dispute: "The State presented evidence showing that my client had a BAC over the legal limit. That's not a dispute, Judge." Defense counsel argued that the State failed to prove beyond a reasonable doubt that defendant was the driver, as opposed to the passenger, of the Lexus.

¶ 26    During its rebuttal argument, the State argued, "Judge, I'm not going to go through the BAC. We know his blood was .259. We know he was under the influence because clearly the issue is driving."

¶ 27    After hearing argument from both sides, the trial court spent 12 pages reviewing the evidence and articulating its factual findings. As to defendant's BAC level, the trial court noted defendant's concession on that issue, finding: "And of course, there's no question regarding intoxication. *That's not an issue as defense concedes*. With a BAC of .259, that's more than three times what the legal limit is in Illinois to be driving." (Emphasis added.) Defense counsel did not object to the court's statement about the defense's concession, either when the trial court made the statement or at any time thereafter.

¶ 28		Defendant was then convicted of multiple counts of driving while intoxicated and driving with a revoked license. Specifically, the trial court found defendant guilty of (1) count I, which charged him with having a BAC level of 0.08 or more while being in control of a motor vehicle and having four prior DUI convictions; (2) count III, which charged the same as count I but with a BAC level of 0.16 or more; (3) count VI, which charged him with having a revoked or suspended license and a BAC level of 0.08 or more while being in control of a motor vehicle; and (4) count VII, which charged the same but without charging a specific BAC level and instead alleging that he was under the influence of alcohol.

¶ 29		In his posttrial motion filed on July 31, 2015, defendant raised no issues concerning either the admission of his hospital records or the sufficiency of the State's proof of his BAC level. The motion argued only that the State had failed to prove that defendant was the driver, as opposed to the passenger, of the Lexus.

¶ 30		In his amended posttrial motion, filed on August 10, 2015, defendant again raised the issue that the State had failed to prove he was the driver, arguing:

> "No reasonable inference of guilt could be drawn by this court from the People's evidence at the close of their case[.] The only reasonable inference that could have been drawn from the People's case was that the Defendant was a passenger in a vehicle involved in an accident and *was intoxicated*." (Emphasis added.)

¶ 31		Defendant's second amended posttrial motion, filed on August 24, 2015, contained the same quote (quoted in the paragraph above) and also argued that the State had failed to prove he was the driver.

¶ 32		On August 25, 2015, the trial court denied defendant's posttrial motion. The parties and the court agreed that the applicable sentencing range was 4 to 15 years. After listening to factors in aggravation and mitigation, the trial court sentenced defendant at the low end of the range, specifically to five years. After announcing the sentence, the trial court merged counts VI and VII into counts I and III. Thus, the two remaining counts were count I, which charged him with having a BAC level of 0.08 or more while being in control of a motor vehicle and having four prior DUI convictions, and count III, which charged the same but with a BAC level of 0.16 or more.

¶ 33		The trial court did not specify on the record that it was issuing two 5-year sentences or that the sentences were concurrent. However, the mittimus, entered on the same day, stated that the trial court entered two concurrent 5-year sentences: one 5-year sentence on count I and one 5-year sentence on count III to run concurrently with the 5-year sentence on count I.

¶ 34		Although both parties ask us to vacate defendant's conviction on count I under the one-act, one-crime rule, neither party asks us to remand for resentencing. Thus, there are no issues raised on appeal concerning defendant's sentence or the sentencing proceeding. A notice of appeal was filed September 14, 2015, and this timely appeal followed.

¶ 35						ANALYSIS

¶ 36		On this appeal, defendant claims, first, that the trial court erred in admitting his hospital records as evidence of his BAC level and that this error rises to the level of plain error. *Piatkowski*, 225 Ill. 2d at 565 (discussing when a reviewing court may consider errors which a defendant failed to raise in the court below). For the reasons discussed below, we do not find this claim persuasive.

¶ 37    Second, defendant claims, and the State agrees, that his two aggravated DUI convictions violate the one act, one crime rule since they were based on "the same physical act" of driving. *Artis*, 232 Ill. 2d at 165. Thus, we vacate his conviction and sentence on count I, which charged a BAC level of over 0.08. *In re Samantha V.*, 234 Ill. 2d at 375 (the trial court violated the one act, one crime rule when it found defendant guilty of two counts of aggravated battery based on the same battery).

¶ 38                              I. Standard of Review

¶ 39    Defendant's first claim, and the only claim disputed on this appeal, is that the trial court committed plain error by admitting his hospital records as evidence of his BAC level. While *de novo* review applies to an evidentiary question if that question concerns how to correctly interpret a rule of law (*e.g.*, *People v. Caffey*, 205 Ill. 2d 52, 89 (2001)), the admission of evidence is generally within the sound discretion of the trial court, and a reviewing court will generally not disturb a trial court's evidentiary ruling absent an abuse of that discretion. *E.g.*, *People v. Romanowski*, 2016 IL App (1st) 142360, ¶ 21. In the case at bar, there is no dispute about a rule of law, so we apply an abuse-of-discretion standard of review. See generally *People v. Drake*, 2017 IL App (1st) 142882, ¶¶ 52-53 (Gordon, J., concurring in part and dissenting in part). An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24; *People v. Patrick*, 233 Ill. 2d 62, 68 (2009).

¶ 40                              II. Chain of Custody

¶ 41    Specifically, defendant claims on appeal that the State failed to establish a sufficient chain of custody that the blood tested was his blood.

¶ 42    A claim that the State presented an incomplete chain of custody is not a challenge to the sufficiency of the evidence but to its foundation and thus is subject to forfeiture. *People v. Banks*, 2016 IL App (1st) 131009, ¶ 68 (citing *People v. Woods*, 214 Ill. 2d 455, 471 (2005)). The application of forfeiture to such claims is particularly appropriate because a defendant's failure to object to the foundation at trial deprives the State of its opportunity to cure any deficiency in the foundation. *Banks*, 2016 IL App (1st) 131009, ¶ 71 (citing *Woods*, 214 Ill. 2d at 470). For example, in the case at bar, when defense counsel objected on "foundation" grounds to People's Exhibit No. 3, which stated defendant's BAC level, the prosecutor offered to "commence and continue until tomorrow, and I'll bring a doctor in for that result if that's what we need to do." However, the doctor's testimony was rendered unnecessary when defense counsel subsequently stated that he withdrew the objection.

¶ 43    In the case at bar, defendant concedes that his claim is forfeited. Failure to either object to the error at trial or raise the error in a posttrial motion results in forfeiture. *People v. Sebby*, 2017 IL 119445, ¶ 48; *People v. Belknap*, 2014 IL 117094, ¶ 66 (in order to preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion).

¶ 44    However, even when a defendant has failed to preserve an alleged error for our review, we may still review the issue for plain error. *Sebby*, 2017 IL 119445, ¶ 48; *Piatkowski*, 225 Ill. 2d at 564; Ill. S. Ct. R. 615(a) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). The plain error doctrine

- 9 -

allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Piatkowski*, 225 Ill. 2d at 565. On the instant appeal, defendant claims plain error only under the first, or closely balanced, prong.

¶ 45    In a plain error analysis, it is the defendant who bears the burden of persuasion. *Sebby*, 2017 IL 119445, ¶¶ 51-52; see also *Woods*, 214 Ill. 2d at 471. A chain-of-custody challenge can be reviewed for plain error only "in the rare case" of "a complete breakdown in the chain." *Banks*, 2016 IL App (1st) 131009, ¶ 68; *People v. Alsup*, 241 Ill. 2d 266, 275 (2011) (plain error occurs " '[w]hen there is a *complete failure of proof*, there is *no link* between the substance tested by the chemist and the substance recovered at the time of defendant's arrest' " (emphases in original) (quoting *Woods*, 214 Ill. 2d at 472)). A complete breakdown occurs, for example, when " 'the inventory number or description of the recovered and tested items did not match,' " so that " 'there is no link between the substance tested by the chemist and the substance recovered at the time of the defendant's arrest.' " *Banks*, 2016 IL App (1st) 131009, ¶ 68 (quoting *Woods*, 214 Ill. 2d at 471-72). In the case at bar, defendant, who bears the burden of persuasion on this issue on appeal, argues that a complete breakdown occurred in this case (1) where the nurse testified that he observed blood being drawn from defendant and that it was sent to the hospital lab, but where the nurse did not follow it himself, and (2) where defendant's medical records contained defendant's name, as well as the date and time of the blood draw, and the nurse testified that he observed defendant's blood sample being labeled with the date and time, but the State presented no testimony about either a unique identifying number for the blood sample or the exact time of the blood draw.

¶ 46    Whether the defendant argues first or second prong error, "[t]he initial analytical step under either prong of the plain error doctrine is [to] determin[e] whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49; *Piatkowski*, 225 Ill. 2d at 565 ("the first step is to determine whether error occurred"). In the case at bar, the State argues that no clear or obvious error occurred because the defense acquiesced in the action now challenged on appeal. As we explain in more detail below, in light of the parties' stipulation and the defense's explicit and repeated concession, both accepted by the trial court, we cannot find any error on the part of the trial court in admitting People's Exhibit No. 3 as evidence of defendant's BAC level.

¶ 47    First, at the end of the trial and before the State rested, the prosecutor stated, without objection from defense counsel, "Judge, there was that stipulation between the parties. I would also ask to read that into the record." This stipulation stated, in relevant part, that "[d]efendant's blood was taken at Lutheran General Hospital Emergency Room on July 6, 2012," and it asked the trial court "to take judicial notice that defendant's whole blood equivalent result is .259 grams per deciliter." " 'A criminal defendant may waive, by stipulation, the need to prove all or part of the case that the State has brought against him.' " *People v. Toliver*, 2016 IL App (1st) 141064, ¶ 31 (quoting *People v. Washington*, 343 Ill. App. 3d 889, 900 (2003)). By conceding an issue, "counsel demonstrated the intent of the defense to eliminate that issue from the case and focus on other aspects of the defense." *Toliver*, 2016 IL App (1st) 141064, ¶ 31; *In re Gabriel W.*, 2017 IL App (1st) 172120, ¶ 49 ("In

short, by stipulating to" a fact, "defense counsel removed that issue from this case."); *Woods*, 214 Ill. 2d at 474-75 ("by stipulating to the chemist's report and not raising the chain of custody issue at trial," the defendant "affirmatively waived review"). In the case at bar, defendant eliminated the issue of defendant's BAC level from the case and focused on the issue of whether he was or was not the driver.

¶ 48    Second, the State argues that defendant also acquiesced in the admission of the medical records that he now challenges on appeal. When a party "procures, invites, or acquiesces" to a trial court's evidentiary ruling, even if the ruling is improper, he cannot contest the ruling on appeal. *People v. Bush*, 214 Ill. 2d 318, 332 (2005); *People v. Harvey*, 211 Ill. 2d 368, 386 (2004); *Caffey*, 205 Ill. 2d 52. In the case at bar, there is no question that defendant acquiesced in the trial court, as we explain below.

¶ 49    In sum, the parties stipulated to and the trial court took judicial notice of defendant's BAC level. On appeal, defendant argues, in essence, that the stipulation and judicial notice were ambiguous. To the extent that they were ambiguous, defense counsel cleared up any possible ambiguity by conceding to the trial court—repeatedly—that the State had established his client's BAC level. For example, defense counsel argued during the bench trial, during his motion for a directed finding, that defendant "was tested at a hospital and *his blood alcohol was a 2.50, a little bit more*." (Emphasis added.) The trial court immediately stated, "[r]ight," thereby indicating its acceptance of defendant's concession. Defense counsel agreed, immediately responding, "All well and good, Judge." To the extent that there was any misunderstanding about what the defense had just conceded, defense counsel repeated in closing, "The State presented evidence showing that my client had a BAC over the legal limit. That's not a dispute, Judge." Later, in its factual findings, the trial court noted defendant's concession on that issue: "And of course, there's no question regarding intoxication. *That's not an issue as defense concedes*." (Emphasis added.)

¶ 50    Thus, in the case at bar, we have (1) a stipulation between the parties, (2) judicial notice taken by the trial court, as requested, and (3) a concession tendered by defendant and accepted by the trial court concerning the sole fact that defendant seeks to challenge on appeal, namely, his BAC level. As a result, we cannot find any error by the trial court in admitting the medical records which stated his BAC level. Thus, there can be no plain error to review. *Sebby*, 2017 IL 119445, ¶ 49 ("[t]he initial analytical step under *** the plain error doctrine is [to] determin[e] whether there was a clear or obvious error at trial").

¶ 51                        III. One Act, One Crime Rule

¶ 52    Second, defendant claims, and the State agrees, that his aggravated DUI convictions violate the one act, one crime rule, since they are based on the same physical act of driving. *Artis*, 232 Ill. 2d at 165 ("Multiple convictions are improper if they are based on precisely the same physical act.").

¶ 53    The application of the one act, one crime rule is a question of law that we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010); *People v. Melecio*, 2017 IL App (1st) 141434, ¶ 64. *De novo* review means that we perform the same analysis a trial court would perform. *Melecio*, 2017 IL App (1st) 141434, ¶ 42.

¶ 54    Under the rule, a defendant may not be convicted of multiple offenses that are based upon precisely the same physical act. *Johnson*, 237 Ill. 2d at 97; *Melecio*, 2017 IL App (1st) 141434, ¶ 65. For example, in *In re Samantha V.*, 234 Ill. 2d at 375-78, our supreme court vacated one

finding of guilty where the defendant had been charged with two counts of aggravated battery based on the same battery. See also *Melecio*, 2017 IL App (1st) 141434, ¶ 70.

¶ 55    If a defendant is convicted of two offenses based upon the same physical act, the conviction for the less serious offense must be vacated because it is error. *Johnson*, 237 Ill. 2d at 97; *Melecio*, 2017 IL App (1st) 141434, ¶ 65. In the case at bar, count I charged a BAC level of over 0.08, while count III charged a BAC level of over 0.16 during the same physical act of driving. Since driving with a higher BAC level is more serious than driving with a lower BAC level, we vacate his conviction and sentence on count I. Neither defendant nor the State asks us to remand for resentencing, so we do not order it.

¶ 56                                    CONCLUSION

¶ 57    For the foregoing reasons, we vacate defendant's aggravated DUI conviction and sentence on count I, and we affirm both his aggravated DUI conviction on count III and his five-year sentence on count III.

¶ 58    Affirmed in part and vacated in part.