NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230213-U

NO. 4-23-0213

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 7, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henderson County |
| TERRANCE L. CLOPTON, | ) | No. 21CF3 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nigel D. Graham, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment as no issue of arguable merit could be raised on appeal.

¶ 2    Following a bench trial, the trial court acquitted defendant, Terrance L. Clopton, of attempted first degree murder (720 ILCS 5/8-4(c)(1)(D), 9-1(a)(1) (West 2020)) and convicted him of home invasion (720 ILCS 5/19-6(a)(3) (West 2020)), aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2020)), and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)). The court sentenced defendant to an aggregate of 37 years in prison. Defendant timely appealed, and the court appointed appellate counsel to represent him.

¶ 3    Appellate counsel now seeks to withdraw pursuant to the procedure in *Anders v. California*, 386 U.S. 738 (1967), contending any argument she might make would be meritless. Defendant has filed a response disagreeing with counsel's assessment of his case and requesting

for new appellate counsel or to proceed *pro se*. We grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5        On January 5, 2021, the State charged defendant by information with four counts. Count I alleged attempted first degree murder (720 ILCS 5/8-4(c)(1)(D), 9-1(a)(1) (West 2020)), in that he, with the intent to commit first degree murder, performed a substantial step in the commission of that offense when he shot Brandon White in the chest with a firearm, which caused White great bodily injury. Count II alleged home invasion (720 ILCS 5/12-11(a)(4) (West 2020)), in that he, knowingly and without authority, entered White's home while knowing White to be present, and he used force against White by threatening to shoot him while armed with a firearm. Count III alleged aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)), in that he knowingly discharged a firearm into a residence he knew to be occupied. Count IV alleged unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)), in that he had previously been convicted of a felony in Illinois and knowingly possessed a .22-caliber handgun.

¶ 6        On September 7, 2022, defendant signed a jury waiver. The trial court explained to him the difference between a jury and bench trial, ascertained he discussed the matter with his counsel and understood the possible penalties in this case, and ensured he was not threatened or promised anything in exchange for his waiver. The court accepted the waiver.

¶ 7                                    A. Bench Trial

¶ 8        On September 12, 2022, the case was scheduled for a bench trial. The State filed an amended information to correct the statutory subsection for home invasion (720 ILCS 5/19-6(a)(3) (West 2020)) and add language defendant would be subject to a mandatory 15-year firearm enhancement if found guilty of that offense (720 ILCS 5/19-6(c) (West 2020)). The State

also corrected the statutory subsection for aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2020)). The trial court informed defendant of each of these changes and noted the previously pled elements remained the same. Defense counsel stated he did not object.

¶ 9        The matter proceeded to a bench trial, where various witnesses largely corroborated the following evidence. On December 31, 2020, Larry and Lora Roberts, along with their son Christian Doty, were at their home in Gladstone, Illinois. Defendant arrived at Lora and Larry's home and waited with Larry while Lora got ready. They planned to leave and get a battery for Lora's car. Defendant asked Larry if their mutual coworker, White, paid rent money he owed from when he stayed with Larry and Lora earlier in the year. Larry said White had not paid them back and sent White a text message stating Lora was going to stop by and pick up the rent money. White responded he did not have it and was not home. Larry and White further argued the rent issue through text messages. The argument escalated, and Larry told White he would see him Monday at work and take it out on him in front of everyone. Larry said defendant seemed agitated, which confused him because it was not his money.

¶ 10        Lora, Larry, and defendant left to get the car battery. Either Larry drove to White's on his own volition or defendant suggested stopping by White's home to get the rent money. Larry and defendant approached the house, and Larry knocked on the door, which had a glass pane on the front and blinds on the inside. No one answered, and Larry walked back toward his truck. Defendant told Larry to hold on, approached the door, and pulled out a gun. Defendant broke the glass pane with the butt of the gun. As defendant reached inside through the broken glass, a two-by-four came out in his direction. Larry said it looked like defendant cut his thumb because he was bleeding. Defendant fired into the house, reached through the broken glass, unlocked and opened

the door, and walked inside. Larry saw White run behind the couch and defendant hit White with the butt of the gun. Defendant said, " 'Where's my f*** money?' "

¶ 11 White stated he did not answer the door because he thought there would be an altercation if he let them inside. White heard Larry state nobody was home and defendant counter they were not leaving without anything. White saw defendant break the glass pane on the door with the butt of a silver gun. White threw a two-by-four through the broken pane, and defendant shot White in his chest and abdomen. White moved to hide behind the couch, and defendant went inside and shot White in his abdomen and in the back of each arm. Defendant then held a gun to White's head and threatened to kill White's family if he told anyone. White went to hand $60 from his wallet to defendant, and defendant directed him to pay Larry. White gave the money to Larry, and Lora and Larry left. Defendant stayed behind and again threatened White's family if White told anyone. Larry and Lora got into the truck and started to leave when defendant joined them. They proceeded to drive back to Lora and Larry's home, and defendant said he would kill Lora and Larry if they told anyone.

¶ 12 White waited until they left and then walked down the road to a neighbor's home to call the police. His phone, which was in the front pocket of his overalls, was damaged by the gunfire. White left the neighbor's home and walked down the street to meet the ambulance. Deputy Matthew Link of the Henderson County Sheriff's Office responded to the call and saw White walking down the road. White told Deputy Link an unknown person had broken into his home and shot him. White did not name defendant until later because he had been threatened and was scared. White handed Deputy Link a bullet that was caught in his overalls. An ambulance transported White to the hospital, and medical personnel determined he had multiple entry and exit wounds in his torso and arms and two bullets remained in his body. He had surgery to remove a bullet from

his abdomen and staple the wounds shut. A bullet remained in his arm, as its removal would cause more damage.

¶ 13          Once Lora, Larry, and defendant returned to Lora and Larry's home, Doty was in the kitchen making food. Doty recalled his mother seemed scared and his father was quiet. Defendant came inside with a shirt wrapped around his hand, and Lora helped him use tissue paper to wipe up his blood. Defendant and Lora threw the tissue paper into the kitchen garbage can. Doty went outside with defendant, and defendant placed the gun under leaves at the side of the house. Doty and defendant walked to the home of one of defendant's friends, where Doty smoked marijuana and became ill. Lora called Doty's phone and defendant answered. Defendant threatened to kill Doty if Lora called the police. Defendant left after they noticed police in the area, and Doty walked home to find police surrounding his house. Police brought Doty to the police station.

¶ 14          Robert Boughton lived nearby and was defendant's friend and his girlfriend's brother. Robert recalled defendant came over on the afternoon of December 30, 2020, with a bleeding hand and asked for bandages. Defendant claimed he beat someone up. Meanwhile, Lora and Larry drove around to look for Doty and were eventually arrested. When Lora and Larry were first interviewed by police, they denied going to White's home, but they later pled guilty to lesser charges in exchange for their testimony against defendant.

¶ 15          Police drove Doty home and searched the house. Doty told police where defendant discarded the gun, but they did not find it. However, Doty stated they were only using their flashlights and did not move the leaves. A day or two later, Doty looked for the gun and found it under the leaves. He contacted the police and placed the gun in his dresser until Deputy Keith DeJaynes of the Henderson County Sheriff's Office retrieved it the next day. Deputy DeJaynes

described the gun as blueish in color. He transported the gun to the police station, sealed it in an evidence bag, filled out an identification tag, and placed it in a safe. Daniel Hill of the Illinois State Police retrieved the gun for testing, which was in a safe and sealed in a bag. The State admitted into evidence a black .22-caliber handgun.

¶ 16 Defendant signed two stipulations. First, defendant signed a stipulation as to the testimony of a forensic scientist, Mary Meaux, providing she (1) examined the firearm Deputy DeJaynes recovered from Lora and Larry's home and bullets found from White's body and overalls and (2) concluded the bullets were fired from the firearm. The stipulation further provided a proper and lawful chain of custody existed for (1) the firearm after it came into Hill's possession as long as a chain of custody before the firearm came into Hill's possession could be proven and (2) all other referenced items. Second, defendant signed a stipulation as to the testimony of a forensic scientist, Lyle D. Boicken, providing he performed a DNA analysis on the blood recovered from White's front door, White's living room floor, snow outside of White's home, and tissue paper found in Lora and Larry's garbage can. He concluded defendant's DNA matched the DNA profiles obtained from those items. The stipulation further provided a proper and lawful chain of custody existed for these items and they should be admitted into evidence.

¶ 17 The State admitted a certified copy of defendant's Iowa felony conviction into evidence. The defense presented the testimony of Karl Reich, an expert in forensic testing, who testified there would be no reason not to perform DNA tests on the firearm recovered in this case and discovering the DNA on the firearm was relevant to the case.

¶ 18 The trial court heard closing arguments and acquitted defendant of attempted first degree murder, finding the evidence did not demonstrate defendant had a specific intent to kill White when he shot him in the chest. Specifically, the court found defendant's view into the home

from the porch was obscured by blinds, which caused him to not see where White was standing when he first fired into White's home and shot White in the chest. The court found the evidence overwhelming as to defendant's guilt of home invasion, aggravated discharge of a firearm, and unlawful possession of a weapon by a felon.

¶ 19                                 B. Posttrial Motions and Sentencing

¶ 20        On November 7, 2022, defendant filed a motion to vacate his convictions and set aside sentencing. He argued his convictions were lesser-included offenses of attempted first degree murder, and since the trial court acquitted him of that charge, the convictions must be vacated.

¶ 21        On November 9, 2022, the trial court held a hearing and denied defendant's motion, finding each conviction was supported by different and distinct physical acts. The court proceeded to sentencing, where it heard evidence of defendant's difficult upbringing and his tendency to be a follower. The court noted the following aggravating factors: defendant's conduct caused or threatened serious harm, defendant had a history of prior criminal activity, including three weapon offenses, defendant previously served multiple prison sentences dating back to 2004, and a sentence was necessary to deter others from committing the same crime. The court found defendant's conduct caused "severe bodily injury and great bodily harm," as White had surgery to remove a bullet from his abdomen, had multiple entry and exit wounds, and was permanently disabled due to the bullet that remained in his arm. The court found no applicable mitigating factors and noted no argument was made in support of any mitigating factor.

¶ 22        As to home invasion, the trial court sentenced defendant to 12 years in prison in addition to the 15-year enhancement, to be served consecutively to his other sentences. The court sentenced defendant to 10 years in prison for aggravated discharge of a firearm and 5 years in prison for unlawful possession of a weapon by a felon, which were ordered to be served

concurrently. The court ordered defendant to serve 85% of his sentences for home invasion and aggravated discharge of a firearm. In sum, the court sentenced defendant to an aggregate of 37 years in prison: 12 years in prison for home invasion plus a 15-year-enhancement, to be served consecutively to concurrent sentences of 10 years for aggravated discharge of a firearm and 5 years for unlawful possession of a weapon by a felon.

¶ 23　　　　　On December 8, 2022, defendant filed a motion to reconsider. He asserted the same lesser-included argument as in his November 7, 2022, motion and added other contentions. He argued the evidence was insufficient to support his convictions because (1) Lora, Larry, and White were all convicted felons, (2) White's identification of the shooter was inconsistent, (3) the gun presented at trial was black and White said the gun was silver, (4) Lora and Larry's testimonies were unreliable because they originally lied to police, (5) the evidence showed Lora and Larry precipitated the entire incident, and (6) no DNA or fingerprint analyses were performed to link him to the gun presented at trial. He also claimed a concurrent sentence for home invasion was unfounded because the State did not allege severe bodily injury and there was no independent finding of severe bodily injury. Last, he argued his sentence was excessive when considering Lora and Larry were proven liars and masterminds of the incident and they only received a sentence of 18 months and 6 years, respectively.

¶ 24　　　　　On March 9, 2023, the trial court held a hearing on defendant's motion. The court amended its sentencing order to reflect the correct term for mandatory supervised release and its previous findings of great bodily harm. The court otherwise denied defendant's motion.

¶ 25　　　　　This appeal followed.

¶ 26　　　　　　　　　　　　II. ANALYSIS

¶ 27　　　　Appellate counsel moves for leave to withdraw. Counsel supports her motion with a memorandum, which states she considered raising the following issues on defendant's behalf: (1) whether defendant executed a proper jury waiver, (2) whether the State proved defendant guilty beyond a reasonable doubt, (3) whether the State's amendment to the information was material or formal, (4) whether the firearm should have been suppressed where the State failed to establish a proper chain of custody, (5) whether defendant's convictions for home invasion and aggravated discharge of a weapon violated the one-act, one-crime rule, (6) whether defendant received an excessive sentence, and (7) whether the imposition of a consecutive sentence to be served at 85% was proper. Counsel explains why she concluded none of these issues has arguable merit. Defendant filed a response requesting new appellate counsel or to proceed *pro se* to address the issues raised by his counsel.

¶ 28　　　　We consider appellate counsel's motion to withdraw and defendant's response under the procedure set out in *Anders*. As to defendant's request for the appointment of new counsel or to proceed *pro se*, it is improper as it fails to comply with Illinois Supreme Court Rule 361(a) (eff. Feb. 1, 2023), which requires an application for other relief to be made by filing a motion. Even assuming, *arguendo*, defendant's request complied with our procedural rules, we would nonetheless reject it. First, defendant has already been appointed counsel and has no right to choose his court-appointed counsel. See *People v. Abernathy*, 399 Ill. App. 3d 420, 426 (2010) (holding a criminal defendant has no right to choose his court-appointed counsel or insist on representation by a particular public defender). Second, allowing his request to proceed *pro se* would be futile, as his response addresses his contentions in great length, and after examining the record, we agree with counsel the issues identified lack arguable merit, and we have identified no

other issues of arguable merit. For the following reasons, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 29                                   A. Jury Waiver

¶ 30          A defendant has a constitutional right to a jury trial, and a waiver of that right must be both knowingly and understandingly made. *People v. Bracey*, 213 Ill. 2d 265, 269 (2004). The Code of Criminal Procedure of 1963 contemplates written jury waivers and waivers occurring in open court. 725 ILCS 5/103-6, 115-1 (West 2022). There is no precise formula to determine whether a defendant knowingly and understandingly waived the right to a jury trial, and we must look at the facts and circumstances of each particular case. *People v. May*, 2021 IL App (4th) 190893, ¶ 44. This presents a question of law, which we review *de novo*. *People v. Bannister*, 232 Ill. 2d 52, 66 (2008).

¶ 31          We note defendant failed to question the validity of the jury waiver in the trial court either by objection or in a posttrial motion. However, we consider this issue under the plain-error doctrine. *Bracey*, 213 Ill. 2d at 270. Accordingly, defendant must prove a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). We first determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 32          The record demonstrates defendant knowingly and voluntarily waived his right to a jury trial. The trial court explained to defendant the differences between a jury trial and a bench trial. The court ensured defendant had an opportunity to discuss the waiver with his counsel,

understood the possible penalties in this case, and was not threatened or promised anything in exchange for the waiver. The written waiver further provided defendant voluntarily, knowingly, and understandingly waived his right to a jury. There is no evidence defendant misunderstood or ever questioned the jury waiver. Therefore, we find no error and, accordingly, no basis upon which counsel could formulate a meritorious challenge to defendant's jury waiver.

¶ 33                                    B. Sufficiency of the Evidence

¶ 34            When a defendant challenges the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. It is the function of the trier of fact to determine the credibility of the witnesses, decide the weight to be given to their testimony, resolve conflicts in the evidence, and draw reasonable inferences from that evidence. *People v. Baker*, 2022 IL App (4th) 210713, ¶ 35. The trier of fact's credibility determinations are entitled to great weight. *People v. Swenson*, 2020 IL 124688, ¶ 36. Moreover, this court will not set a criminal conviction aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 35            Testimony provided Lora, Larry, and defendant went to White's home to collect money. White saw them arrive and decided to not answer the door when he heard a knock. Defendant knocked out a glass pane on the front door with the butt of his gun. White then threw a two-by-four through the broken pane and began to move to hide behind the couch. Defendant fired into the house, reached through the broken glass, unlocked and opened the door, walked inside, fired more shots at White, held the gun to White's head, and twice threatened to kill White's family if he told anyone. Defendant's DNA was found on White's front door, White's living room floor,

snow outside of White's home, and the tissue paper from Lora and Larry's home. White was shot several times and sought medical attention. The bullets recovered from White's body and overalls were fired from the gun Doty turned over to police.

¶ 36        Viewing the evidence in the light most favorable to the State, we believe a rational trier of fact could have found defendant guilty of all three counts beyond a reasonable doubt. Thus, for the following reasons, there appears to be no basis upon which counsel could formulate a meritorious challenge as to the sufficiency of defendants' convictions.

¶ 37                              1. *Home Invasion*

¶ 38        A defendant commits home invasion when he knowingly enters the dwelling place of another without authority, knows or has reason to know that a person is present and, while armed with a firearm, uses force or threatens the imminent use of force upon any person within the dwelling, regardless of whether an injury occurs (720 ILCS 5/19-6(a)(3) (West 2020)). The evidence demonstrated defendant broke the glass on White's front door and saw a two-by-four come through the broken glass. At this point, he knew or had reason to know a person was present within the home. Defendant then reached through the broken glass to unlock the door and entered the home. After defendant fired multiple shots at White and White paid Larry, defendant used force *and* threatened the use of imminent force when he held a gun to White's head and stated he would kill his family if he told anyone. Defendant disputes he "threatened" White because White did not testify defendant threatened to shoot him and White had already been shot at that point. We disagree. A communication providing one will inflict physical harm on the person threatened or any others person constitutes a threat. 720 ILCS 5/15-5(a) (West 2020). The fact White had already been shot does not change this analysis. Moreover, the State was only required to prove defendant either used force *or* threatened the imminent use of force. Both were proven here.

¶ 39        Defendant also argues evidence introduced by the State to prove his guilt of attempted first degree murder could not be used to support his other convictions because he was acquitted of that charge. This is an inaccurate statement of law. Finally, he argues the State failed to identify him as the perpetrator. Based on the evidence presented, we strongly disagree.

¶ 40                    2. *Aggravated Discharge of a Firearm*

¶ 41        A defendant commits the crime of aggravated discharge of a firearm when he knowingly discharges a firearm into a residence that he knows or reasonably should know to be occupied (720 ILCS 5/24-1.2(a)(1) (West 2020)). The evidence demonstrated, after defendant broke the glass on White's front door, White projected a two-by-four through the broken glass. Defendant then shot into the home when he knew or should have known it to be occupied. These facts were corroborated by testimony and physical evidence the State presented at trial.

¶ 42                    3. *Unlawful Possession of a Weapon by a Felon*

¶ 43        "To prove a defendant guilty of unlawful possession of a weapon by a felon, the State must establish that the defendant (1) knowingly possessed the firearm and (2) had been convicted of a felony." *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 10; 720 ILCS 5/24-1.1(a) (West 2020). The evidence demonstrated defendant knowingly possessed a firearm during the incident at White's home and afterwards at Lora and Larry's home. Further, a certified copy of defendant's prior felony conviction in Iowa was admitted into evidence. Defendant argues his Iowa conviction cannot be used to satisfy this offense because the State's amended information alleged he was previously convicted of a felony in Illinois—not Iowa. However, where an information is attacked for the first time posttrial, a defendant must show that he was prejudiced in the preparation of his defense. *People v. Rowell*, 229 Ill. 2d 82, 93 (2008). Defendant does not argue he was

- 13 -

prejudiced in the preparation of his defense, and we fail to see how he would be prejudiced on this basis.

¶ 44                                    C. Amended Information

¶ 45          Generally, a charging instrument must state the name of the offense, cite the statutory provision alleged to have been violated, set forth the nature and the elements of the offense charged, state the date and county of the offense, and state the name of the accused. 725 ILCS 5/111-3(a)(1)-(5) (West 2020). The State may seek to amend an information at any time due to formal defects. 725 ILCS 5/111-5 (West 2020). An amendment is permissible as long as the change is not material or does not alter the nature and elements of the charged offense. *People v. Shipp*, 2011 IL App (2d) 100197, ¶ 21. Further, amendments are allowed when there is no resulting surprise or prejudice to the defendant or where the record shows the defendant was otherwise aware of the charges against him. *People v. Ross*, 395 Ill. App. 3d 660, 667 (2009).

¶ 46          Here, the State amended the information to correct two statutory citations and include language providing defendant was subject to a statutory sentencing enhancement. The State made no changes to its factual allegations, which aligned with the corrected statutory citations. Defense counsel stated he had no objection to the amended information. This acquiescence constitutes a waiver of the issue, and the only challenge available to defendant is whether he received ineffective assistance of counsel. *Baker*, 2022 IL App (4th) 210713, ¶ 61; see *People v. Henderson*, 2017 IL App (1st) 142259, ¶¶ 208-210 (stating when defense counsel asks the court to proceed in a certain manner, the invited-error doctrine provides the only appealable issue is ineffective assistance of counsel). To satisfy a claim of ineffective assistance of counsel, a two-prong analysis applies where "[a] defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Manning*, 241 Ill. 2d 319, 326 (2011).

¶ 47     The record demonstrates these amendments were not material, defendant was aware of the charges against him, the amendments did not alter the nature and elements of the charged offenses, and there was no resulting surprise or prejudice to defendant. See *Shipp*, 2011 IL App (2d) 100197, ¶ 21. Therefore, counsel's performance did not fall below an objective standard of reasonableness when he provided he stated he did not object to the amended information, and defendant cannot satisfy a claim of ineffective assistance of counsel. See *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 57 (holding failure to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984), precludes a finding of ineffective assistance of counsel). Defendant nonetheless argues the State informed the trial court it was only amending the information as to home invasion and not also aggravated discharge of a firearm. The record demonstrates the State informed the court that citations for both counts were corrected in the amended information and the court told defendant of both citation changes. Accordingly, there appears to be no basis upon which counsel could formulate a meritorious challenge to the State's amended information.

¶ 48                    D. Chain of Custody

¶ 49     When the State seeks to introduce an object into evidence, it must establish an adequate foundation by either a witness identifying the object or a sufficient chain of custody. *People v. Woods*, 214 Ill. 2d 455, 466 (2005). The method of using a witness to identify the object is appropriate when the object has readily identifiable and unique characteristics and its composition is unlikely to change. *Woods*, 214 Ill. 2d at 466. If the object does not fall within this description, the State must establish a chain of custody demonstrating reasonable measures were used to protect the evidence from the time it was seized and it was unlikely the evidence had been

- 15 -

altered. *Woods*, 214 Ill. 2d at 467. Once the State satisfies this *prima facie* case, the burden shifts to the defendant to show actual evidence of tampering, alteration, or substitution. *People v. Alsup*, 241 Ill. 2d 266, 274-75 (2011). However, a defendant may waive the requirement of proof of chain of custody by entering into a stipulation. *Woods*, 214 Ill. 2d at 468. The admissibility of evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12. "An abuse of discretion occurs when the ruling is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the trial court's view." *People v. Ward*, 2011 IL 108690, ¶ 21. As defendant did not object at trial or raise the issue in a posttrial motion, we review this issue for plain error and first determine whether any error occurred. *Eppinger*, 2013 IL 114121, ¶ 19.

¶ 50        In this case, the State laid its foundation for the firearm by establishing a chain of custody from the time it was seized. Doty notified police he recovered the gun from underneath leaves in his yard and kept it in his dresser drawer until Deputy DeJaynes picked it up the next day. Deputy DeJaynes took the gun to the police station, sealed it in an evidence bag, filled out an identification tag, and placed it in a safe. Hill came to the police station to retrieve the gun for testing, which was still in the safe and sealed in the bag. Defendant stipulated a proper and lawful chain of custody existed for the gun after it came into Hill's possession as long as a lawful chain of custody was proven *before* Hill's possession. The evidence demonstrates the State established its burden that reasonable measures were used to protect the gun from the time it was seized by Deputy DeJaynes and it was unlikely the gun had been altered. The burden then shifted to defendant to show actual evidence of tampering, alteration, or substitution, and we fail to find any such evidence in this case.

¶ 51        Defendant takes issue with the chain of custody because Deputy DeJaynes described the gun as blueish in color, while the gun admitted into evidence was black. However, this goes to the weight of the evidence—not its admissibility. See *Alsup*, 241 Ill. 2d at 275. Defendant also argues his counsel was ineffective for failing to object to the chain of custody of the DNA evidence and bullets, but this claim is thwarted by defendant's own stipulations, which provided a lawful chain of custody existed for those items. See *People v. Harris*, 2015 IL App (4th) 140696, ¶ 36. Thus, we find there is no basis upon which counsel could formulate a meritorious challenge to the State's chain of custody.

¶ 52                           E. One-Act, One-Crime Rule

¶ 53        The one-act, one-crime rule stands for the proposition that a criminal defendant may not be convicted of multiple offenses when those offenses are founded on precisely the same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11. We employ a two-step analysis to determine whether a violation of the rule occurred. First, we consider whether the defendant's conduct consisted of a single physical act or separate acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If we find the defendant committed multiple acts, we move to the second step and determine whether any of the offenses are lesser-included offenses. *Rodriguez*, 169 Ill. 2d at 186. A lesser-included offense is "an offense established by proof of lesser facts or mental state, or both, than the charged offense." *People v. Miller*, 238 Ill. 2d 161, 165-66 (2010). If we find no lesser-included offenses, then multiple convictions are proper. *Rodriguez*, 169 Ill. 2d at 186. This presents a question of law, which we review *de novo*. *People v. Smith*, 2019 IL 123901, ¶ 15.

¶ 54        Here, although defendant raised this issue in his posttrial motion, he did not raise the issue during his trial. See *People v. Sebby*, 2017 IL 119445, ¶ 48 (holding a defendant preserves an error for review when he objects to the error in the trial court *and* raises the error in a posttrial

motion). Therefore, we review this issue for plain error and first determine whether any error occurred. *Eppinger*, 2013 IL 114121, ¶ 19.

¶ 55     The State's amended information alleged defendant committed home invasion when he knowingly and without authority entered White's home while knowing White to be present and used force against White by threatening to shoot him while armed with a firearm. (720 ILCS 5/19-6(a)(3) (West 2020)). The State alleged defendant committed aggravated discharge of a firearm when he knowingly discharged a firearm into a residence he knew to be occupied (720 ILCS 5/24-1.2(a)(1) (West 2020)). Finally, the State alleged defendant committed unlawful possession of a weapon by a felon when he had previously been convicted of a felony and knowingly possessed a .22-caliber handgun (720 ILCS 5/24-1.1(a) (West 2020)). The language of the amended information clearly demonstrates the charges were based on multiple acts. The State's closing argument provides the same, as it explained the evidence for each count.

¶ 56     Although each count alleged defendant committed an act with a firearm, they were multiple acts: threatening to shoot White while holding the firearm to his head, discharging the firearm into White's home, and possessing the firearm as a felon during and after the incident. It is evident these allegations are not based on the same physical act and one charge is not a lesser-included offense of another. See *Miller*, 238 Ill. 2d at 165-66. Defendant argues his convictions violate the one-act, one-crime rule because the State's alleged acts for attempted first degree murder were precisely the same as those for his other convictions. However, defendant was not convicted of attempted first degree murder, so no violation of the rule could occur on this basis. Thus, we find there appears to be no basis upon which counsel could formulate a meritorious challenge to defendant's convictions under the one-act, one-crime rule.

¶ 57     F. Sentencing

- 18 -

¶ 58        When sentencing a defendant, the trial court must carefully consider all factors in aggravation and mitigation, including "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). A reviewing court will not substitute its judgment for that of the trial court simply because it might have weighed the factors differently. *People v. Klein*, 2022 IL App (4th) 200599, ¶ 37. A sentence imposed within the statutory range is presumed to be proper, and we review it for an abuse of discretion. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 104.

¶ 59        The trial court sentenced defendant within the statutory range for each conviction. Defendant was subject to a sentencing range of 6 to 30 years for home invasion, a Class X felony (720 ILCS 5/19-6(a)(3), (c) (West 2020); 730 ILCS 5/5-4.5-25(a) (West 2020)), and the court sentenced him to 12 years' imprisonment. Defendant was also subject to the mandatory 15-year enhancement (720 ILCS 5/19-6(c) (West 2020)), resulting in a 27-year sentence for home invasion. As to aggravated discharge of a firearm, a Class 1 felony, defendant was subject to a sentencing range of 4 to 15 years (720 ILCS 5/24-1.2(a)(1), (b) (West 2020); 730 ILCS 5/5-4.5-30(a) (West 2020)), and the court sentenced him to 10 years. Last, defendant was subject to a sentencing range of 2 to 10 years for unlawful possession of a weapon by a felon, a Class 3 felony (720 ILCS 5/24-1.1(a), (e) (West 2020); 730 ILCS 5/5-4.5-40(a) (West 2020)), and the court sentenced him to 5 years. The record demonstrates the court considered various statutory factors and the evidence presented, and we find no evidence of record he received an excessive sentence.

¶ 60        Next, we find the trial court acted within its authority to order defendant's sentence for home invasion to be served consecutively to his sentences for aggravated discharge of a firearm

and unlawful possession of a weapon by a felon. When a defendant is convicted of a Class X or Class 1 felony and inflicted severe bodily injury during the commission of that felony, the court shall impose consecutive sentences. *People v. Whitney*, 188 Ill. 2d 91, 98-99 (1999); 730 ILCS 5/5-8-4(d)(1) (West 2020). Here, defendant was convicted of home invasion, a Class X felony, and the court found defendant inflicted severe bodily injury during its commission. Therefore, the court properly imposed a consecutive sentence for home invasion. Defendant argues great bodily harm was only alleged as to the attempted first degree murder charge, and since he was acquitted of that charge, it cannot serve as a basis for the court to impose consecutive sentences for his other convictions. However, our supreme court explicitly rejected the argument that only Class X or Class 1 felonies in which severe bodily injury is an inherent factor will qualify as triggering offenses. *Whitney*, 188 Ill. 2d at 99. The court explained, "any Class X or Class 1 felony that results in severe bodily injury being inflicted on the victim of that felony triggers consecutive sentences." *Whitney*, 188 Ill. 2d at 99.

¶ 61        Finally, we find the trial court properly ordered defendant to serve 85% of his sentences for home invasion based on its finding of great bodily harm. When a defendant is convicted of home invasion, the trial court shall make a finding as to whether the conduct leading to the conviction resulted in great bodily harm to a victim and enter the finding and the basis for the finding in the record. 730 ILCS 5/5-4-1(c-1) (West 2020). Here, the court made such a finding and explained White had surgery to remove a bullet from his abdomen, had multiple entry and exit wounds, and was permanently disabled due to the bullet that remained in his arm. Further, a prisoner serving a sentence for various offenses, including home invasion, shall receive no more than 4.5 days of sentence credit for each month of his prison sentence when the court makes the aforementioned finding of great bodily harm. 730 ILCS 5/3-6-3(a)(2)(iii) (West 2020). As the

court made the requisite findings in this case, defendant's sentence was proper. We conclude there appears to be no basis upon which counsel could formulate a meritorious challenge to defendant's sentence.

¶ 62                                    III. CONCLUSION

¶ 63          For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 64          Affirmed.